T. A. DEISEN, Administrator, *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

June 11, 1890.

**Railway—Injury Causing Death—Contributory Negligence.—** *Held* that, upon the evidence in this case, the negligence of defendant and the contributory negligence of the deceased were questions for the jury.

**Same—Evidence—Life-Tables.—**While life-tables are admissible to assist the jury in estimating the expectation of life, they are not essential. The jury may make their estimate from the evidence as to the age and health of the person.

**Practice—Charge to be taken as Entirety.—**It is not error that a particular instruction to the jury is incomplete, or does not present the whole law of the case, provided the whole charge, taken in its entirety, fully and fairly presents the law in a manner not calculated to mislead.

Appeal by defendant from an order of the district court for Jackson county, *Perkins,* J., presiding, refusing a new trial after verdict of $3,500 for plaintiff.

*J. H. Howe, S. L. Perrin,* and *Daniel Rohrer,* for appellant.

*T. J. Knox* and *L. F. Lammers,* for respondent.

MITCHELL, J. This was an action under the statute, to recover damages for the death of plaintiff's intestate, caused by the alleged negligence of the defendant. The principal question is whether the verdict was justified by the evidence. As our conclusion, after an examination of the entire record, is that we would not be justified in reversing the order of the district judge refusing a new trial, we shall not attempt to state or discuss the evidence at any length, but content ourselves with referring to a few of the salient features of the case. On the day the deceased was killed he was engaged in unloading coal into a coal-house out of a flat-car which had been run by defendant on one of its side tracks opposite a coal-house, for the express purpose of enabling the owner of the coal to unload it. Defendant's station agent knew that the deceased was engaged in that work. There were on the same side track, and east of the coal-car, several box-cars, notably one large one attached to the flat-car, which

would prevent a person on the coal-car from seeing cars approaching from that direction. In this condition of things, an engine from a freight train was run in from the main track upon this side track, and from the east, for the purpose of getting out some empty box-cars. It struck and set in motion the cars east of the coal-car, which in turn struck and set in motion the coal-car, the wheels of which ran over and killed the deceased. From the position of the body, it is evident that, at the precise moment when the wheels ran over him, the deceased was lying on his back across and at right angles with the rail next the coal-house, his head lying between the rails, and his feet outside and towards the coal-house, his back immediately above the hips resting on the rail, which was some four inches above the ties on either side. That his arms were down by his sides, and his hands also on the rail, is evident from the fact that they were cut off or mangled by the car-wheels. There was evidence tending to show, and which would have justified the jury in finding, that the cars which set the coal-car in motion were driven down against it with very considerable violence, and without any signal or warning to the deceased. In view of all these facts, it can hardly be doubted that the jury were justified in finding that this was negligence on the part of the agents and servants of the railway company. That this negligence was the proximate cause of the death of the deceased cannot be doubted. Plaintiff's contention is that the evidence tends to show that the deceased, while in the line of his work, was thrown by the violent concussion from the coal-car against the coal-house, and then fell or was thrown backward across the rail, and under the moving car. If this was so, unquestionably the verdict is right. But, on the other hand, the defendant claims that the evidence shows that the deceased must have gotten off the car, and lain down under it, on the track, and probably gone to sleep. If the evidence proves this, unquestionably the deceased was himself guilty of negligence, and no recovery could be had, as the court expressly instructed the jury. And this is really the pivotal point in the case.

As no one saw the accident, the proof of the exact manner of its occurrence, or just what the deceased was doing at that precise time, consists entirely of circumstantial evidence. The circumstances bear-

ing more or less on the question are too numerous to be repeated. Defendant relies, as corroborating his theory, mainly upon the position and attitude of the body, together with the fact that an old boot which deceased wore on one foot was off, and lying near. On the other hand, plaintiff urges the improbability that any sane person would lie down and go to sleep under cars on a railroad track, and especially in so uncomfortable a position as having his back resting on an iron rail standing several inches higher than the ties. He also urges the fact that the evidence showed that both collar-bones had been broken by a force not applied to the breast-bone direct, but to the hands, or hands and points of the shoulders, and hence that they must have been broken before the deceased fell under the car. This he contends supports the theory that they were broken by his being thrown violently from the car against the coal-house. One witness, who was well acquainted with the deceased, and who was at work loading a car at a warehouse about 150 feet further west on the same side track, swears positively to having seen the deceased standing on the coal-car only a few minutes before the time he was killed. The weight of this witness' testimony is much weakened by the fact that he swears that the intervening track between him and the deceased was entirely clear, while it otherwise appears that there were in fact three box-cars on it, and that, accepting as true his statement as to his position when he saw deceased, these cars would have in all probability entirely intercepted his view of the coal-car. Still it is possible that he might be correct in the statement that he saw deceased, and mistaken as to his own position at the time, or as to the fact of the track being clear of cars.

While this is by no means a full statement, yet it is a sufficient outline to give a general idea of the state of the case upon the evidence. And while it is by no means free from doubt, and there are several circumstances which it is difficult to explain on either theory of the case, yet, inasmuch as there was ample evidence that the defendant was guilty of negligence which proximately caused the death of the deceased, and as the burden was upon it to affirmatively prove contributory negligence, our conclusion is that, upon the whole evidence, the case was one for the jury.

There are 12 assignments of error relating to the charge of the court, or its refusals to charge the jury, which may all be disposed of by a few general suggestions, without considering them *seriatim.* The defendant complains that in some portions of its charge the court, in effect, instructed the jury that they should find for the plaintiff in case they found that the death of the deceased was caused by the negligence of the defendant; thus leaving out of consideration the question of the contributory negligence of the deceased himself. We do not think the charge is fairly subject to any such criticism. No court can embody in one sentence or proposition all the rules of law applicable to a case. The charge must be taken as a whole, and not in fragments. Thus considered, we think the charge was a full, fair, and unusually clear statement of the law applicable to such cases. The court expressly charged the jury that, "if the deceased was made aware of the approach of the cars in any manner whatever, then it was his duty to act on it in reference to his safety, and it would be negligence on his part to work regardless of the danger, in a dangerous or exposed position, where he would be liable to be thrown from the car when struck;" also that, "if you find from the evidence that before and at the time of the casualty the deceased was on the railroad track, not engaged in unloading the car, then the defendant did not owe him any duty, and his death was not caused by the acts of the defendant solely, and the plaintiff cannot recover;" and again, "if you believe from the evidence that before the coal-car was moved at the time of the casualty the deceased had gone underneath the coal-car, and that while there he was run over and killed, then his death was caused by his own negligence, and there can be no recovery in this action." These instructions, being in the concrete form, and exactly fitted to the case, were easy to be understood by the jury, and fully covered every supposable act of contributory negligence which there was any evidence tending to prove.

The criticisms upon the charge as to the measure of damages, and what facts and circumstances the jury were to take into account in fixing the amount, in case they found for the plaintiff, are, in our judgment, wholly unwarranted. For example, it is assigned as error that the court charged that they might take into account the prob-

abilities of the duration of deceased's life, and refused to instruct them that there was no evidence as to the expectation of his life. The point of this is that neither the Carlisle tables, nor any similar tables, were introduced in evidence. The age of deceased, however, was proved. The Carlisle and other life-tables are admissible in evidence to assist the jury in estimating the expectation of life, but are not essential. They may make their estimate from the age, health, habits, and physical condition of the person at the time of his death. *Scheffler* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 518, (21 N. W. Rep. 711;) 3 Suth. Dam. 283; *Beems* v. *Chicago, etc., Ry. Co.*, 67 Iowa, 435, (25 N. W. Rep. 693.) Neither do we find any error in the rulings of the court in the admission of evidence on the trial.

Order affirmed.