CRAIG et al. v. MICHIGAN LUBRICATOR CO. et al.

(Circuit Court of Appeals, Sixth Circuit. July 6, 1897.)

No. 414.

PATENTS—INFRINGEMENT—STEAM-ENGINE LUBRICATORS.

The Craig patent, No. 398,583, for an improvement in sight-feed steam-engine lubricators, construed, limited, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

J. W. Raymond and Edmund Whitmore, for appellants.

George S. Payson and George N. Lothrop, for appellees.

Before TAFT and LURTON, Circuit Judges, and SAGE, District Judge.

SAGE, District Judge. This appeal is from a decree dismissing bill for alleged infringement of letters patent No. 398,583, issued to W. H. Craig, February 29, 1889, for an improvement in steam-engine lubricators. See 72 Fed. 173.

The defendants are the Michigan Lubricator Company and Frank W. Marvin, as its president and individually. By stipulation, Max Nathan was made a party complainant, because of certain rights held by him under the patent. The suit was not pressed against Marvin, and no appeal was taken from the dismissal of the bill as to him. The bill, which is in the usual form, charges infringement of claims 2, 4, 5, 6, and 7. The answer sets up the invalidity of the claims of the patent for want of novelty or invention; that they are limited to the construction shown in the patent drawings; that they are for nonpatentable aggregations; that by limitations imposed by the patent office, and accepted by Craig, without appeal, the claims are restricted to the construction shown in the drawings of the letters patent; that a cup embodying Craig's alleged invention was publicly used and sold for more than two years prior to his application; and that the defendants do not infringe.

The object of the invention, as set forth in the specification, is "to provide a means of equalizing the steam pressure in a lubricator provided with a sight feed or an observation chamber, in which the drops of oil may be seen in or on their way to the part or parts of the engine to be lubricated in cases where the oil-discharge conduit leading from such lubricator is subject to a variation therein of pressure not incident at the time to the boiler from which steam is conducted into the lubricator."

The drawings show a steam-engine lubricator, which has a globular, metallic condenser, immediately above and connected with a sight

feed or observation chamber, which has a glass pane, d, a reflecting partition, e, and a nipple of small pipe, f, to lead oil from the reservoir into the observation chamber when, the patentee says,—

"The latter is charged with water that may have escaped from the condenser down through the educt pipe or conduit, g, leading from the observation chamber up into the condenser to near the top thereof, such pipe, g, being to receive live steam from the condenser steam-induct pipe or conduit.

"From the condenser at its lower part, a passage, h (see Fig. 2), extends and opens into a narrow space between a reflector, i, and the glass pane, k, of another sight feed, l, such space opening into the oil reservoir. A screw plug, m, arranged as shown in Fig. 2, serves to interrupt the flow of water from the condenser to the said narrow space.

"The oil reservoir is furnished with means for supplying it with oil, such being an induct, n (see Fig. 1), provided with a screw plug, o. Furthermore, there is in rear of the partition, e, an oil exit or discharge pipe, r, to lead the oil to the part or parts of the engine to be lubricated.

"The above-described lubricator is essentially like that exhibited in letters patent No. 277,464, dated May 15, 1883, and granted to me. I have made additions to it for the object or purpose hereinbefore mentioned; that is to say, I have provided the condenser with a pipe or conduit, p, to lead from it to the boiler, in order to conduct steam from the boiler into the condenser, such pipe having in it a stopcock, q.

"The steam-educt pipe or conduit, g, has its upper end in close juxtaposition with the steam-induct pipe or conduit, p, and its other end is connected with the top of a steam-equalizing chamber near the point where the oil-discharging conduit connects. Thus, live steam passes direct from the induct pipe or conduit, p, through the educt conduit, g, to the top of the observation chamber. This produces a compact device. The pipe, g, is wholly within the lines of the lubricator, being a part thereof, and requiring no fitting or adjusting when the device is placed on a boiler. This educt or steam pipe, g, leads into a steam space or duct connected to the observation chamber. This space forms a steam chamber, which enhances materially the value of the lubricator.

"When the lubricator is being used, live steam passes down the induct, p, into the condenser, b, a portion of it being condensed, and passing down the passage, h, into the oil cup, a, as usual. A modicum of the live steam from induct, p, passes as live steam down the educt, g, into the steam chamber, and, with the oil which rises through the sight-feed chamber, passes off through the exit, r, into the oil pipe, such outflow being regulated, as desired, by the stopcock, s. I have also provided the oil-exit pipe or conduit, r, with a stopcock, s, arranged on it as represented.

"From the above it will be seen that in this, my improved steam-engine lubricator, the steam enters directly into the condenser without first passing upward through the pipe therein. The water of condensation from such steam flows from the condenser down through a conduit to the oil reservoir, and the live steam passes down the pipe, g. The oil observation chamber being charged with water, the oil, in drops, passes through such water, and over the partition, e, into the oil-exit passage, and thence through such to the part or parts of the engine to be lubricated. The stopcock, s, being slightly open, the oil discharged in consequence thereof is met by the steam passing from the condenser downward through the pipe, g, therein into and through the exit pipe, such oil, by such steam, being carried to the part or parts of the engine to be lubricated.

"The object of the stopcock, s, in the exit pipe, r, when used with the above-described lubricator, A, provided with the steam pipe leading into the upper part of its condenser, is to throttle or regulate or wholly interrupt the discharge of the oil and steam in case of the steam for supplying the valve chest of the engine being wholly or partially shut off, such steam being supplied to such valve chest by a conduit separate from the oil-exit pipe of the lubricator. Therefore, with the cock, s, to the oil lubricator exit pipe, and with the steam let into the upper part of the condenser, and also from the condenser into the exit pipe, it will be seen that I can maintain a constant or nearly constant or uniform pressure of steam within the lubricator, even when the steam from the boiler to the valve chest of the engine may be cut off, such enabling me to maintain a uniform or practically uniform feed of oil through its sight-feed or observation chamber when the steam to the valve chest of the engine may be shut off.

"The steam chamber above referred to possesses very material advantages. It furnishes at this point a body of hot, live steam, that communicates with the sight-feed chamber. It keeps the lubricator sufficiently hot in cold weather, so as to have the oil in a good fluid condition without boiling it. The condense water passing by this chamber is kept warm, and, as warm water enters the oil chamber, softens the oil. This steam chamber also has a most valuable function as an equalizer, and forms in the lubricator an equalizing chamber, the exit of which is controlled by the valve, s. By means of this valve the exit is so controlled as to diminish the flow of steam through the steam chamber when desired, so that the steam pressure in the lubricator is regulated or equalized, which permits the oil under all circumstances only to be fed by the action of the pressure of the condense water.

"I do not claim a lubricator constructed as represented in the United States patent No. 262,774, in which oil passes in the sight-feed or observation tube downward through steam, and not through water, as in my lubricator."

The drawings are here presented as they appear in the letters patent.

The claims charged to be infringed are as follows:

"(2) A lubricator combining these elements: A condenser, a reservoir for oil, an observation chamber in which oil rises through water, an oil-discharging conduit leading from the top of the observation chamber, a conduit for conveying steam from the boiler into the condenser, and another conduit wholly within the lines of the lubricator, and for conveying live steam from the induct conduit of the condenser to the top of the observation chamber, as set forth."

"(4) In a sight-feed lubricator through water in which oil rises, the combination of the oil reservoir, a steam chamber at the top thereof, the oil-discharge conduit, and the condenser having a pipe to lead steam thereto, and also a pipe to lead steam into the said steam chamber and oil-discharging conduit.

"(5) In a sight-feed lubricator of the character described, a steam chamber located near the top of the oil reservoir, and communicating with the sight-feed chamber through which oil rises through water, and also having a pipe to lead steam into such chamber, and also communicate with the steam condenser of such lubricator, and another pipe to lead steam to the condenser, and communicate with the steam chamber or pipe leading thereto, whereby an equalizing pressure is obtained, as set forth.

"(6) A steam chamber located at the top of the oil reservoir, and having a pipe to lead steam into such chamber, and also to communicate with the condenser, and a pipe to lead steam to such condenser, such steam chamber also communicating with a sight-feed chamber through which oil rises through water, and also having an oil-discharge passage to communicate with a pipe to convey the oil or oil and steam to the part or parts of the engine to be lubricated, all being substantially as set forth.

"(7) In a sight-feed lubricator in which oil rises through water, and having a steam chamber at the top part of the oil reservoir of such a lubricator, the combination of the following: The steam chamber referred to, a condenser, a pipe to lead steam thereto, and another pipe to lead steam into the said steam chamber, a conduit communicating with the sight-feed and steam chambers, a choked oil-discharge conduit communicating with the two last named chambers, the oil reservoir, and feed-regulating valve, all being combined to operate substantially as set forth."

The problem which those engaged in devising steam lubricators had to encounter was how to introduce the necessary supply of lubricating oil regularly, and with any desired flow into the steam or valve chest of the engine against the pressure of the steam when the engine was in operation. The problem was solved, in a measure at first, by so connecting the oil reservoir with the steam pipe or boiler as to apply to its contents a counter steam pressure to balance the pressure in the steam chest, and then by some additional force, as gravity, feed the oil as needed into the steam chest and the parts to be lubricated.

(No. Model.)

W. H. CRAIG.
LUBRICATOR.

No. 398,583.

Patented Feb. 26, 1889.

Prior to Craig's device, there were some 30 patents designed to accomplish this result, which are pleaded and put in evidence by defendants as anticipations. Among them, one of the most prominent is the Siebert patent, No. 179,226, dated June 27, 1876, application filed January 3, 1876. That patent was for an improvement on his own invention, covered by letters patent No. 111,881, issued February 4, 1871. He states that in the lubricator covered by that patent the steam pressure upon the oil cup was balanced, and the only force for feeding out the oil was the hydrostatic pressure arising from the column of condensed steam in the reservoir. The equality of pressure was maintained only so long as the steam was admitted to the steam pipe through which the oil passed to the parts to be lubricated. When steam was shut off from that pipe, there being no pressure left to equalize the steam pressure through the condensing pipe, the oil was forced out from its cup, and into the steam chest, in excessive quantity, causing waste, and emptying the cup. To

overcome that difficulty, Siebert devised the improvement covered by his patent of June 27, 1876. It consisted of adding a supplemental pipe connected directly at one end with the condensing pipe, or with the boiler, and at the other end with the steam pipe through which the oil passed to the parts to be lubricated. The supplemental pipe acted in unison with the steam pipe so long as steam was admitted to that pipe, but supplied its place and acted independently to accomplish the same result whenever steam was shut off from that pipe or from what was known as the "dry pipe." The claim was for the supplemental, or, as it was termed, the "auxiliary" pipe, in connection with the lubricator.

Attention was directed by Craig to his patent No. 277,464, granted May 15, 1883, as being essentially like the patent in suit, but he states in his specification that he has made additions to the former patent, "for the object or purpose hereinbefore mentioned; that is to say, I have provided the condenser with a pipe or conduit, p, to lead it from the boiler in order to conduct steam from the boiler into the condenser, such pipe having in it a suitable cock, q."

By reference to the earlier patent it will be seen that the two condensers are identical, excepting that the screw plug in the top of the condenser of the first has been taken out, and a pipe, p, connected at that point. The steam inlet in that patent was below the condenser, and was provided with a tube or pipe, extending up into the condenser, where the steam was condensed to supply the water for displacing the oil, which, when displaced, passed out by means of a tube from the oil chamber through water condensed in a trap in the lower portion of the steam inlet, and thence through the observation chamber to the steam pipe of the engine cylinder. There is no intimation in that patent, or in the patent in suit, that the pipe, g, as it is lettered in the patent in suit, or b, as it is lettered in the prior patent, can be located elsewhere than within the condenser. In the specification of the patent in suit it is described as "wholly within the lines of the lubricator, being a part thereof," and as an educt pipe or conduit "leading from the observation chamber up into the condenser to near the top thereof, such pipe, g, being to receive live steam from the condenser steam induct pipe of conduit." In addition to this, and not less significant, it appears from the file wrapper and contents that the patent office understood that within the lines of the lubricator meant within the condenser of the lubricator. In the opinion of the examiners in chief on appeal in the matter of the interference between the application of Craig and patent No. 308,258, granted November 18, 1884, to Clarence· B. Hodges and Elija McCoy, the examiners in chief stated that:

"The essence of the matter in issue, as well as Craig's claims ex parte, lies in the conduit to lead steam from the boiler into the condenser of a side-feed lubricator of the character described, in combination with another conduit within, and to lead steam from the condenser into the oil-discharging conduit, so as to provide a circulation when the throttle of a locomotive engine is closed, and thus prevent the pumping action of the cylinders from draining the oil chamber. This is what Craig now alleges to be his invention and discovery, and, in consequence, obtained a judgment of patentability on."

It appears that Craig, in order to save his claim to priority, had introduced testimony to prove the possession of this device in 1883, and prior thereto. The examiners in chief said that that proved too much,—

"For if the lubricator which he had in use on stationary engines, and advertised for such use, contained the invention which he now bases his claim on, the same matter is clearly shown by the evidence to have been known and used by others as early as 1879. Craig cannot blow hot and cold with the same breath. He cannot plead that he had not the invention when public use is in question, and by the same evidence show that he had it when priority of invention is in question. He was given the benefit of the doubt on his own qualifications and distinctions, and 'ut res magis valeat quam pereat' to save forfeiture, but the invention cannot now be expanded to save priority."

This decision was affirmed by the acting commissioner, who subsequently denied a motion for rehearing. Later, in his official capacity as assistant commissioner, he granted a motion to reopen the case, and a former decision awarding priority to Hodges and Mc-Coy and other parties in the interference was vacated, and Craig was declared to be the prior inventor. But the limitation above quoted of the pipe, g, was never removed, and it binds Craig and those holding under him.

The appellees' lubricator is manufactured in two forms, but the difference between them is so slight as to be unimportant. The blue print of the first shows a cup in which the inflowing steam and the outflowing oil are brought together in a chamber from which steam is taken to the condenser, and oil to the parts to be lubricated. The cup comprises a condenser and an oil reservoir connected with the condenser by means of a pipe controlled by a valve. At each side of the lubricator there is a sight feed of the up-drop variety, like that shown in patent 196,650, to G. H. Flower, dated October 30, 1877. These sight feeds are exactly alike, one connecting with the right-hand steam chest, and the other with the left. At their upper ends they connect with passages g³, shown in complainants' exhibit defendants' blue print Fig. 4, which leads into a chamber, r, into which also enters a steam-supply pipe, p.

Complainants Exhibit
Defendants Blue Print
Lawrence Bond, M. P.

Fig. 4.

The steam is supplied to the condenser by a branch of this pipe, p, leading from the chamber, r; and from the chamber, r, the oil and steam are led off to the steam chests, through choked tubes, marked "s². " The branch of the pipe, p, leading from the chamber, r, which is the conduit communicating with the sight-feed and steam chambers, is placed outside the condensing chamber, and not inside the condensing chamber, as in the complainants' patent. Counsel for the complainants insist that in both cases this pipe performs the same function, and produces the same result, and that the sole difference is one of location. They contend that the defendants' pipe is "wholly within the lines of the lubricator," as they interpret that expression; that is to say, that it "is a part of the lubricator proper (not necessarily inclosed within the main chambers or castings of the lubricator), included between the points at which the lubricator is connected with the boiler and engine, as distinguished from some part of the piping outside of the lubricator, which has to be taken care of by the person connecting the lubricator with the boiler and engine, and may or may not be properly supplied by the person making the connections."

We do not concur in this interpretation. To infringe, the pipe must be within the condenser, substantially as shown in the drawings and described in the text of the complainants' patent, limited, as it is, by his acceptance of the rulings of the examiners in chief. The defendants therefore do not infringe.

This conclusion renders it unnecessary to consider whether the complainants' patent, as limited, is valid, or whether, as was held by the court below, it is anticipated by prior inventions. The decree appealed from is affirmed, with costs.