CITY OF SOUTH OMAHA V. R. JOHN SUTLIFFE, A MINOR, BY ANNA SUTLIFFE, HIS NEXT FRIEND.

FILED DECEMBER 7, 1904. No. 13,569.

1. **Instruction:** MEASURE OF DAMAGES. Under the issues involved in this case, *held* not error to omit from a general instruction on the measure of damages any reference to the social standing of plaintiff's mother.

2. **Instructions** examined, and *held* to not permit a recovery for loss of earnings during plaintiff's minority.

3. **Evidence:** CARLISLE TABLE. While the Carlisle and other mortuary tables of accepted accuracy and in general use are always properly admissible in evidence for the purpose of aiding a court or jury in determining the probable expectancy of life, when such fact is in issue, yet, when admitted, these mortuary tables are not binding upon the estimate of the triers of such fact. They may, without such tables, make their own estimate from the age, health, habits, physical condition and appearance of the person whose expectancy is at issue.

4. **Case Distinguished.** *Chicago, R. I. & P. R. Co. v. McDowell,* 66 Neb. 170, examined and distinguished.

5. **Action for Personal Injuries:** PLEADING: EVIDENCE. In actions for personal injuries, it is not necessary to specially allege every indirect injury to each part of the body to lay the foundation for such proof on the trial; such proof may be admitted when the injury alleged is shown to have been the natural and proximate cause of the injury proved.

6. **Expert Testimony.** When medical testimony is relied upon to prove

the cause or effect of a physical injury, it seldom goes further than an opinion based on the experience of the witness and the general learning of the profession.  Positive statements of fact are seldom indulged in by physicians when testifying as experts, and yet this character of testimony is universally admitted by the courts of this country.

7. **Review.** Actions of the trial court in the exclusion of evidence examined, and *held* not prejudicial.

8. **Remittitur.** Award of damages examined, and *held* excessive; but *held*, further, that such excess may be cured by a remittitur of $3,000 from the judgment of the lower court.

ERROR to the district court for Douglas county: GUY R. C. READ, JUDGE.  *Affirmed upon condition.*

*A. H. Murdock,* for plaintiff in error.

*T. J. Mahoney* and *H. C. Murphy, contra.*

OLDHAM, C.

This is an action for personal injuries received by plaintiff, a minor of the age of three and one-half years, who was thrown from a seat on the front end of a delivery wagon, in the city of South Omaha, and injured in a manner which will be hereafter described.  The suit was brought by his foster-mother, as next friend, against the city of South Omaha, and resulted in a verdict and judgment for $10,000 damages, and to reverse this judgment the defendant city brings error to this court.

The facts underlying this controversy are that, when about one year old, plaintiff was abandoned by his father and mother, Richard and Cora Hooten, and given into the care and control of his aunt, Mrs. Anna R. Sutliffe, who, subsequently, legally adopted the child as her own.  Mrs. Sutliffe resided with the plaintiff at the village of Bellevue, Nebraska, about six miles distant from the defendant city.  On the morning of the injury (July 17, 1902) she left the plaintiff with his brother, who was about six years old, at her home in Bellevue, and went on

business to Omaha and Council Bluffs; after she had gone, a young man by the name of Lee, who was acquainted with the children, asked them to ride with him in his delivery wagon to South Omaha. The seat on the delivery wagon extended out to, and even with, the front end of the wagon. The plaintiff sat in the middle of the seat between the driver and his older brother. In this manner they rode to the city and transacted such business as the driver had in charge, and on the return home, while driving along 24th street of the defendant city, the front wheel of the wagon went into a deep ditch, or gully, which had remained for a long time in the street, and which was obstructed from view by muddy surface water, and, as a result of this accident, plaintiff was thrown forward with his head immediately in front of the wheel of the wagon, which passed over the right side of plaintiff's head, tearing off the scalp, commencing at the corner of the right eye, and passing in a semicircle upward and downward to a point above and behind the right ear, at the highest point of the semicircle abrading the periosteum to the extent of about one-half inch, turning the scalp down over the plaintiff's ear, and grinding the filth from the street into the wound. After the injury, plaintiff received prompt and efficient medical treatment at the hospital, and later at his home. This treatment was continued for a period of two months, and until the child became convalescent.

There is no complaint in the brief of the defendant city as to the sufficiency of the evidence to establish its liability for the injury, but its very able and exhaustive brief is directed entirely to an attack on the instructions of the trial court on the measure of damage, and to the rulings of the court on the admission and exclusion of testimony bearing on this question. We will examine these complaints as nearly as possible in the order in which they are presented in the city's brief.

The city in its answer alleged in mitigation of damages that plaintiff's mother was a woman without character

or reputation, and had abandoned plaintiff when he was one year old. This allegation was conceded to be true, and it is urged that the court should have given this admission in instructions to ,the jury to be considered in estimating the quantum of plaintiff's damage. There are two sufficient reasons, we think, why the court did not err in including this admission in his general instruction on the measure of damages. One is that plaintiff did not allege in aggravation of damages any injury to his social position, and the other is that the city did not request an instruction submitting the question of the social standing of plaintiff's parents to the jury; and, again, plaintiff's social status would be affected rather by the reputation of his adopted parent than by that of his mother, under the admitted facts in this case.

It is next objected that the instruction stating the issues to the jury did not point out clearly what the material issues were. An examination of the record shows that no exception was taken to the two instructions setting out the issues. In addition to this, however, we think that the issues were fairly and clearly set out in these instructions.

The next complaint to which our attention is directed is as to the action of the trial court in giving paragraph 11 of instructions on its own motion. This instruction is as follows:

"If you find for the plaintiff, it will be your duty to determine from the evidence the amount of his damages, which should be actual compensation for his injuries. In doing so, you should carefully consider from the evidence, the nature, extent and character of the injuries sustained, you should also determine whether or not the injuries to the plaintiff are permanent, and you should allow him for all damages which naturally and directly result from his injuries, whether in the past or in the future. You should allow him such damages for bodily pain and mental anguish as under the evidence you believe him entitled to, and you should allow him such damages for

physical and mental disability, if any such there be, as from the evidence you believe him entitled to. The law establishes no rule by which to fix the amount of damage for bodily pain and mental anguish, but leaves it to you to determine from the evidence the reasonable amount thereof. If you should find from the evidence that the plaintiff will suffer damage by reason of impaired capacity to earn money, if any such impaired capacity you find, then, in estimating this element of the plaintiff's damage, you must bear in mind the fact that under the law the plaintiff would not be entitled to his earnings until after he became 21 years of age, and you should not allow plaintiff any damages for what he might otherwise have earned before coming of age. There is no testimony in this case upon which you can allow plaintiff anything for expenses occasioned by his injuries."

It is alleged against this instruction that it permits the jury to award damages for the loss of earning capacity during the minority of the child, because of the clause which says: "You should allow him for all damages which naturally and directly result from his injuries, whether in the past or in the future." This reference to the future is interpreted as an authority for allowing damages for loss of earning capacity during minority. But this, to our minds, is a very strained and unreasonable construction of the charge. The portion of the charge in which this clause appears was directed to general damages which might be allowed if the injuries were shown to be permanent in their nature. The portion of the instruction which treats of the loss of earning capacity follows this in its logical order, and plainly and unmistakably tells the jury that they shall not consider any loss of earning capacity during the minority of the child.

It is also urged that there is no evidence in the record to sustain the charge as to the loss of earning capacity after plaintiff had reached his majority. This contention is based on the proposition that neither the Carlisle table

nor any other recognized tables of the expectancy of life were introduced by the plaintiff to show what his expectancy might be, and that consequently there was no testimony from which the jury would be justified in finding that he would ever arrive at the age of 21 years. While the Carlisle and other mortuary tables of accepted accuracy and in general use are always properly admissible in evidence for the purpose of aiding a court or jury in determining the probable expectancy of life, when such fact is in issue, yet, when admitted, these mortuary tables are not binding upon the estimate of the triers of such fact. They may without such table make their own estimate from the age, health, habits, physical condition and appearance of the person whose expectancy is at issue. *Deisen v. Chicago, St. P., M. & O. R. Co.,* 43 Minn. 454, 45 N. W. 864; *Beems v. Chicago, R. I. & P. R. Co.,* 67 Ia. 435, 25 N. W. 693; 2 Sutherland, Damages (3d ed.), 455; *Atchison, T. & S. F. R. Co. v. Hughes,* 55 Kan. 491.

It is further urged that the instruction is erroneous in failing to inform the jury that only such future damages can be allowed as are established with reasonable certainty. In support of this contention the decision of this court in *Chicago, R. I. & P. R. Co. v. McDowell,* 66 Neb. 170, is cited. An instruction in this case was condemned by this court because it permitted the jury to consider such injuries as plaintiff "may hereafter suffer," it being held that, to charge a jury so as to allow damages to the plaintiff that he *may hereafter suffer,* opens a wide field of speculation, and permits an award based on conjecture rather than on specific proof. But the instruction in the case at bar we do not think obnoxious to this objection, for the charge limits the award of damages to such as "naturally and directly result from his injuries." In other words, it limits the recovery to such damages as the jury believed did actually result from the injury. The court further said: "If you should find from the evidence that the plaintiff will suffer damages by reason of

impaired capacity of earning money," etc. Here there is no field for speculation or conjecture, as the jury under the direction of this charge must first find that plaintiff "will," and not that he "may," suffer damages, before making him any award.

For the purpose of examining the alleged errors committed by the trial court in the admission of evidence offered by plaintiff touching on the measure of damages, it is necessary to refer to the allegations of the petition with reference to the injury. The petition, after describing with particularity the injuries received by plaintiff, alleges that one of the parietal bones was caused to press downward upon the brain of plaintiff, thereby causing serious, dangerous and permanent injuries to body and mind. It also alleges that plaintiff's bodily health and mental condition have been seriously, dangerously and permanently impaired; that prior to the injuries plaintiff was an exceedingly bright boy, but that since the injuries he has become desultory and dull, and his mental and bodily activity has greatly deteriorated. Under this and other similar allegations plaintiff was permitted to show, over the objection of the defendant, that before the injury he could speak plainly, but that since the injury he was unable to speak without stuttering. That before the injury he was left-handed, but that since the injury he had changed from the use of his left to that of his right hand. That before the injury he had perfect control of his bladder, but that since the injury he had lost this control. It is urged against the admission of this testimony that plaintiff could not show those alleged injuries under the general allegations of the petition, and that, to render this testimony competent, there should have been a particular allegation of damages arising from each of these causes in the petition. The expert testimony offered by plaintiff tended to show that each of these effects were the logical result of the injury to the brain functions caused by pressure upon the brain by the parietal bone. In other words, if the plaintiff's medical experts were

correct in their conclusions, the change from left-handed-ness to right-handedness was occasioned by the partial loss of muscular control of the left side of the body, occasioned by the pressure on the right side of the brain; and the stammering and loss of control of the bladder came from the same cause; in short, that these manifestations were symptoms which tended to show an impairment of the brain functions caused by the accident. In actions for personal injuries, it is not necessary to specially allege every injury to each part of the body, to lay the foundation for such proof on the trial; such evidence may be admitted when the injury alleged is shown to have been the natural and proximate cause of the injury proved. In *Maitland v. Gilbert Paper Co.*, 97 Wis. 476, 72 N. W. 1124, the petition alleged an injury to one eye. The court received evidence showing an impairment of the other eye as one of the results of the injury. It was held, on review, that this was not erroneous, the court saying that "it could see no reason why evidence as to all the injury to plaintiff which followed naturally from the destruction of the left eye was not competent." To the same effect are the holdings in *Williams v. Oregon Short-Line R. Co.*, 18 Utah, 210, 54 Pac. 991; *Missouri, K. & T. R. Co. v. Edling*, 18 Tex. 171, 45 S. W. 406; *Quirk v. Siegel-Cooper Co.*, 56 N. Y. Supp. 49.

It is further urged against the admission of this testimony that the medical experts introduced by plaintiff only testified that, in their opinions, these effects were produced by the injury to the brain, and that they did not positively trace them to such injury. When medical testimony is relied upon to prove the cause or effect of a physical injury, it seldom goes further than an opinion based on the experience of the witness and the general learning of the profession. Positive statements of fact are seldom indulged in by physicians when testifying as experts, and yet this character of testimony is universally admitted by the courts of this country. *Peterson v. Chicago, M. & St. P. R. Co.*, 38 Minn. 511, 39 N. W. 485;

City of South Omaha v. Sutliffe.

*Block v. Milwaukee Street R. Co.,* 89 Wis. 371; *Turner v. City of Newburgh,* 109 N. Y. 301; *Lehigh & H. R. Co. v. Marchant,* 84 Fed. 870.

The next alleged error called to our attention is that with reference to the action of the trial court in excluding certain testimony offered from the deposition of Dr. Betts by the defendant. The evidence offered bore, if at all, very remotely on the measure of damage, and much of it was clearly incompetent. When objections were sustained to the questions propounded, defendant did not offer the answers contained in the depositions, and have a ruling of the court on such offer. Under the well-established rule of this court, when testimony is offered, and an objection is made and sustained to a question propounded, the party offering the evidence must follow the question with the offer of proof, to entitle him to a review of the ruling of the district court by this tribunal. Objections as to other evidence excluded are wholly unfounded, and do not require a further discussion.

After a careful review of the record in this case, we have failed to find any errors prejudicial to defendant in the trial of the cause, unless it be in the amount of damages awarded by the court and jury. It is plain that in suits of this nature, where the burden of the damage awarded falls upon the taxpayers of a city or village, who are, at most, only very indirectly responsible for the negligence occasioning the injury, the award should be confined strictly to such damages as are plainly compensatory. We also fully recognize that there is no rule by which an injury, such as the evidence in this case shows plaintiff to have suffered, can be estimated in dollars and cents. However, after much hesitation, and a careful review of the testimony bearing on the nature and extent of plaintiff's injury, we are inclined to think that the damages awarded are somewhat excessive. It appears to us that the evidence fairly shows that plaintiff, as a result of his injury, will bear a foreboding looking scar on his head and face during his natural life; that he may

suffer a partial paralysis of his left arm permanently; that the stammering and loss of control of the bladder are temporary injuries which time will cure; and that he has suffered great bodily pain and anguish from his injuries, but that this is of temporary and not permanent duration. Considering all these results of the injury, we think a $10,000 verdict against the city smacks somewhat of smart money, and is excessive.

We therefore recommend that, unless plaintiff enter a remittitur of $3,000 from the judgment awarded in the district court within 30 days from the filing of this opinion, the judgment of the district court be reversed and the cause remanded for further proceedings. But that if such remittitur is filed the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for further proceedings, unless the plaintiff enter a remittitur of $3,000 within 30 days of the filing of this opinion; and it is further ordered that if such remittitur be filed the judgment of the district court be affirmed.

JUDGMENT ACCORDINGLY.