## Springfield Electric Light & Power Company v. Kate W. Calvert, Administratrix.

1. PERSONAL INJURIES—*what does not absolve co-defendant from liability for.* A defendant in an action for personal injuries is not absolved from liability by reason of the fact that suit was brought against himself and another, which other was found not guilty.

2. MEASURE OF DAMAGES—*what element of, in action for death*

caused by wrongful act. In estimating the pecuniary loss result-
ing to the widow and next of kin of plaintiff's intestate, it is
proper for the jury to take into consideration, among other ele-
ments, the probable duration of the life of the deceased until ter-
minated by natural causes.

3. DURATION OF LIFE—what evidence competent to establish.
Standard tables of mortality are admissible for the purpose of en-
abling the jury to determine the probable duration of life where
such question is relevant in the cause.

4. VERDICT—when excessive. A verdict of $7,000 in an action
for death caused by alleged wrongful act is excessive where it ap-
pears that the plaintiff's intestate was at the time of his death fifty-
six years of age and left him surviving a widow and two sons,
aged, respectively, twelve and twenty years, the earnings of such
intestate being from $12 to $15 per week.

Action in case for death caused by alleged wrongful act. Appeal
from the Circuit Court of Sangamon county; the Hon. JAMES A.
CREIGHTON, Judge, presiding. Heard in this court at the November
term, 1906. Affirmed upon remittitur. Opinion filed June 1, 1907.

WILSON, WARREN & CHILD, for appellant.

ALBERT J. SALZENSTEIN and T. J. CONDON, for appel-
lee.

MR. JUSTICE BAUME delivered the opinion of the
court.

Appellee recovered a verdict and judgment against
appellant in the Circuit Court of Sangamon county for
$7,000, for negligently causing the death of her intes-
tate, Cecil Calvert. The only grounds urged by ap-
pellant for a reversal of the judgment, are, that the
court admitted improper evidence on behalf of appel-
lee; that the verdict of the jury is against the mani-
fest weight of the evidence, and that the damages are
excessive.

In November, 1904, the deceased was one of a crew
of men employed by William Drake, a contractor, in
removing the metal smoke stacks from a building be-
longing to appellant. The roof of the building was
covered with one-inch boards overlaid with tar paper,
and consisted of flat and sloping surfaces. The flat

surface of the roof was fifteen or eighteen feet wide and fifty or sixty feet long, and from this flat surface the roof sloped on the four sides to a connection with the outer walls of the building. Three weeks or a month prior to the accident, one of the smoke stacks had fallen on the roof of the building and made an irregular hole from two to five feet in diameter through the boards and tar paper on the sloping surface of the roof. This hole was plainly visible to every person on the roof and about the building. There is evidence tending to show that some of the boards on the flat surface of the roof, immediately adjacent to the hole in the sloping surface, were splintered and torn away, and that the tar paper covering the same was intact, presenting a substantially smooth, unbroken surface on the flat portion of the roof.

On the day of the accident while the deceased and his fellow-servant, one Andrew Dippo, were working at a stack on the flat portion of the roof about ten feet from the hole in the sloping surface of the roof, the deceased had occasion to get a rain shutter which was lying on the flat surface of the roof four or five feet from the hole in the sloping surface. Dippo remained at work near the stack preparing a place for the rain shutter to be fitted around the stack so as to shut off the escaping smoke and heat. Dippo, the only person who observed the deceased at or about the time of the accident, testifies that when he first looked up the deceased had hold of the rain shutter; that he then heard a noise and again looked up and saw the top of the deceased's head or hat going down the hole; that the portion of the roof which the deceased fell through was the flat surface, and about two feet from the edge of the slope; that there was no hole apparent in that portion of the roof and that it looked safe and good at that point; that immediately after the deceased fell through the roof, he (Dippo) went to the place and found a hole about two by two and one-half feet in size where the tar paper, which immediately

before the deceased fell appeared to be sound, had
sunk or given away. The testimony of the witnesses
Fitzpatrick, Stillwater and Samuels, though less ex-
plicit than that of Dippo, tends to show that although
the flat surface of the roof was covered with the tar
paper, some of the boards under it were broken and
splintered, and that the hole in the roof which was
visible, was in the sloping portion. A careful exam-
ination and consideration of the evidence, as it appears
in the record, by no means satisfies us that appellee's
theory as to the manner in which the deceased came to
his death is correct; but we are not prepared to say that
the verdict of the jury, sanctioned by the trial judge,
is so contrary to the manifest weight of the evidence,
as to justify us in setting it aside. The only evidence
in the record upon the vital issue of fact involved was
introduced on behalf of appellee. Appellant offered
no evidence whatever.

The fact that the suit was brought against appellant
and William Drake jointly, and that the jury only
found appellant guilty, does not absolve appellant
from liability. Furthermore, the evidence does not
show that Drake had either actual or constructive
notice of the alleged defective condition of the roof.

The deceased was on the roof, not as a trespasser,
or licensee, but by the implied invitation of appellant,
the owner of the premises, and appellant owed to him
the duty to exercise reasonable care that there were
no latent defects in the roof, whereby he might, while
in the exercise of ordinary care for his own safety,
be injured.

It being admitted in the record, that the deceased, at
the time of his death, was fifty-six years of age and in
good health, the trial court, over the objection of appel-
lant, permitted appellee to show the expectancy of life
of the deceased, as the same appeared in the mortality
tables prepared by Dr. Wigglesworth. In estimating
the pecuniary loss resulting to the widow and next of
kin of the deceased, it was proper for the jury to take

into consideration, among other elements, the probable duration of the life of the deceased until terminated by natural causes. Betting v. Hobbett, 142 Ill. 72.

While the precise question here involved does not appear to have been determined by any of the courts of review in this state, it has been repeatedly held by courts of last resort in other states, that in actions to recover damages for death by wrongful act, standard tables of mortality are admissible in evidence for the purpose of enabling the jury to determine the probable duration of life of the deceased. Donaldson v. Miss. etc. R. R. Co., 18 Iowa, 280; Sauter v. N. Y. & H. R. R. Co., 66 N. Y. 50; Duval v. Hunt, 34 Fla. 85; Georgia R. & B. Co. v. Oaks, 52 Ga. 410; Deisen v. C., St. P., M. & O. Ry. Co., 43 Minn. 454; Steinbrunner v. P. & W. Ry. Co., 146 Pa. 504; G. H. & S. A. Ry. Co. v. Leonard (Texas), 29 S. W. Rep. 995; McKeigue v. Janesville, 68 Wis. 50. See also note to U. P. Ry. Co. v. Yates in 40 L. R. A. 553. In City of Joliet v. Blower, 155 Ill. 414, it was held that standard and recognized mortality or life tables, together with computations by experts upon them, are competent testimony, in connection with other evidence, to show the expectancy of life and the present value of a life estate, for the purpose of estimating damages to a remainderman from the change of grade of a street, as well before a jury in an action at law as in equity.

While the mortality tables were by no means conclusive as to the probable duration of the life of the deceased, we think they were properly admitted as some evidence competent to be considered by the jury in determining that question. Appellant did not predicate its objection upon the ground that the Wigglesworth tables were not standard and recognized tables of mortality, and that question is, therefore, not before us.

The deceased was fifty-six years of age at the time of his death and left surviving him a widow and two sons, aged, respectively, twelve and twenty years. His

average earnings were from twelve to fifteen dollars a week. Upon this state of facts we are constrained to hold that the damages awarded appellee are excessive. If, within twenty days, appellee will remit $2,000 from the amount of her judgment, the judgment will be affirmed for $5,000, otherwise it will be reversed and the cause remanded.

*Affirmed upon remittitur. Remittitur filed and judgment affirmed.*