## KNIGHT et al. v. UNION HARDWARE CO.

District Court, D. Connecticut.  July 18, 1928.

No. 1860.

1. Patents ⊗➡168(2)—Claim of patent is limited to invention as determined by Patent Office, and should not be enlarged beyond fair interpretation of its terms.

Claim of patent must be held to define what the Patent Office has determined to be the patentee's invention, and claim should not be enlarged beyond the fair interpretation of its terms.

2. Patents ⊗➡328—No. 976,267, claims 3 and 4, for golf club with tubular metallic shaft, as limited to torsionless structure, held valid.

Knight patent, No. 976,267, claims 3 and 4, for golf club with tubular metallic shaft, held valid only as limited to cover torsionless structure of steel tubing.

3. Patents ⊗➡328—No. 976,267, for golf club with tubular metallic shaft, limited to torsionless structure, held not infringed.

Knight patent, No. 976,267, claims 3 and 4, for golf club with tubular metallic shaft, held not infringed, in view of necessary limitation of claims to torsionless structure of steel tubing.

In Equity. Patent infringement suit by Arthur F. Knight and others against the Union Hardware Company. Decree dismissing the bill.

Melville Church and Clarence B. Des Jardins, of Washington, D. C., and William J. Malone, of Bristol, Conn., for plaintiffs.

Robert Starr Allyn and Hyland R. Johns, both of New York City, and Clarence W. Bronson, of New Haven, Conn., for defendant.

THOMAS, District Judge. The bill in this case charges infringement of United States letters patent No. 976,267, issued November 22, 1910, to Arthur F. Knight, for improvements in golf clubs. The plaintiffs are the patentee, who owns a seven-eighths interest in the patent, Benjamin B. Hull, who owns the remaining one-eighth interest, and the Horton Manufacturing Company of Bristol, Conn., which, by virtue of an exclusive license, manufactures golf club shafts under the patent in suit.

The defenses are (1) noninvention; (2) invalidity, due to prior knowledge by others; and (3) noninfringement.

In the specification the patentee says that the object of his invention is "to produce a golf club in which the line of flight of the ball may more truly conform to the direction of the blow delivered by the player."

It is asserted by the patentee that prior to his invention golf clubs were constructed by securing the head of the club to a wood-

en shaft, usually of a highly elastic wood, such as selected seasoned hickory, tapering to a comparatively small section near the head and much stouter at the handle end, and that hickory has uniformly been preferred on account of its hardness, toughness, and suppleness; the latter quality being very important in controlling the rebound of the head after the powerful impact with the ball and adding to the distance of the drive. The patentee claims to have discovered that there is an inherent objection in a hickory shaft, because the wood is fibrous in nature, and therefore offers but slight resistance to torsional strain, in consequence of which the head of the club yields in a line circumferential to the axis of the shaft, or, in other words, the blow produces a strong torsional strain, which twists the hickory shaft. This torsional element is alleged to be highly objectionable, since an angular rebound causes the ball to deviate from the direction of impact, so that, unless the golf player knows how to offset this inherent tendency of the club, his play will be uncertain and irregular.

In order to overcome this tendency or defect, the patentee seeks to provide a construction which is practically torsionless, by making the shaft of steel tubing, preferably hardened and tempered to give as great suppleness as desired. The tubing, as described in the specification, may be cylindrical, although a tapered or stepped tube is preferred. The patentee furthermore states that high carbon steel is preferred in making the tube, and that it may be tempered so as to increase the resistance to torsional strain. The tube may be case-hardened with improved results, or nickel steel may be used; the latter being known to be of high torsional resistance.

The patentee goes on to say that "my invention consists of a golf club * * * provided with a torsionless tubular shaft and preferably one of rigid and highly elastic steel tubing."

He further asserts in the specification "that the essential feature of my invention is the nontorsional tubular characteristic of the shaft, and in carrying out this object any suitable metal, alloy, or material might be employed which has a great freedom from torsional yield."

Claims 3 and 4 are in issue, and read as follows:

"3. A golf club provided with a tubular metallic shaft in which the volume of metal decreases toward the head.

"4. A golf club provided with a shaft of tapered and tempered steel tubing."

These claims are written in plain everyday language, so that, under ordinary circumstances, no reference would have to be made to the specification of the patent to interpret the same. The defendant asserts, however, that unless certain limitations are read into the claims, in view of the procedure followed in the Patent Office, both claims are invalid, in view of the prior art, and that, even with these limitations, their validity is highly questionable.

[1, 2] The file wrapper and contents of the patent in suit show that the claims were originally rejected by the Patent Office on the Hornsburgh British patent, No. 8,603 of 1894, and the Horton United States patent No. 359,153, issued March 8, 1887. The patentee thereupon amended his specification, and represented to the Patent Office that the chief requirement of his shaft is that it shall be free from torsion and that the claims "now cover a torsionless structure of steel tubing." It is fundamental that a claim must be held to define what the Patent Office has determined to be the patentee's invention, and that it ought not to be enlarged beyond the fair interpretation of its terms. In Kelly v. Clow, 89 F. 297, Judge Baker, speaking for the Circuit Court of Appeals for the Seventh Circuit respecting this rule, said on page 306:

"He [the patentee] cannot claim such a construction of his patent as would include what he was expressly required to abandon as a condition of the grant, even if it takes away a material part of his real invention. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425 [14 S. Ct. 627, 38 L. Ed. 500]."

And Judge Brown, speaking for the Supreme Court in the Morgan Envelope Case, just cited, said on page 429 of 152 U. S. (14 S. Ct. 629):

"But the patentee having once presented his claim in that form, and the Patent Office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim, or such a construction of his present claim as would be equivalent thereto."

In Dowagiac Manufacturing Co. v. Superior Drill Co., 115 F. 886, Judge Severens, speaking for the Circuit Court of Appeals, Sixth Circuit, said on page 896:

"Now, whatever doubt there might have been as to whether the claim was limited in the construction of its language by the specification, it was removed by the limitation which he put upon it by his explanation, the

consequence of which was the allowance of his patent; and the claim must be read as limited in this respect in the same way as are the other claims."

See, also, Craig v. Michigan Lubricator Co. (C. C. A.) 81 F. 870.

In view of this rule, supported as it is by these and other decisions, I agree with the argument of counsel for the defendant that the correspondence between the solicitor and the Examiner should be construed as reading the torsionless feature into the claims. The suggestion that these claims should be construed as covering broadly a golf club provided with a metallic tubular shaft, which is tapered and tempered, must be rejected. The claims would not and could not have been allowed by the Patent Office, in view of the references cited in the proceedings resulting in the grant of the patent in suit, unless we read into them the torsionless characteristic.

The evidence shows that golf clubs, including those with metallic shafts, were known long before the patentee entered the field. The Grant British patent, No. 17,929, issued in 1892, describes a golf club shaft made of steel or other elastic metal, either hollow or solid, or partly hollow and partly solid. It was also old to make a steel shaft for golf clubs that was tapered, as such a shaft is shown in the Horsburgh British patent, No. 8,603 of 1894. It was also old to make the shaft of steel or other metal formed to a tubular or other suitable configuration, as is shown in the Bullows British patent, No. 4,291 issued in 1896. The question therefore is: Was it invention to temper the shaft disclosed by the British patents mentioned, in order to increase the resistance to torsional strain? I do not regard it as the work of the inventive and creative faculties to do so. It was rather, as I view it, the exercise of the reason and experience of the mechanic skilled in the art, and did not involve invention. National Safety Lift Co. v. Anderson (C. C. A.) 276 F. 696; Andrews v. Thum (C. C. A.) 67 F. 911, 913; Linscott Supply Co. v. Hopewell (C. C. A.) 212 F. 403; Thompson v. Boisselier, 114 U. S. 1, 12, 5 S. Ct. 1042, 29 L. Ed. 76.

Of course, it must be held that the patentee was the first to provide a torsionless or substantially torsionless tubular metallic shaft or golf club, in order to enable a player to make his game more uniform, and with which even a beginner may learn to play golf fairly well, so that the claims in suit are valid, if read with the limitations imposed upon them by the patentee, who responded to the Patent Office rejection by stating that the claims "cover a torsionless structure of steel tubing," without which limitation the patent could not have issued. But they are not valid without these limitations, or if it is attempted to broaden their scope, so as to include *any* tubular metallic shaft. The limitations read into the claims make them valid, but in such case the defendant does not infringe the claims in suit, because defendant's shaft possesses torsional characteristics.

[3] In view of the fact that the claims in suit are of such a narrow and limited scope, and are confined, as the specification states, to a structure comprising a tubular metallic shaft that is tapered, tempered, and torsionless, or practically torsionless, necessarily it follows that with this limitation the defendant's article does not infringe, because its shaft plays substantially the same as a wooden shaft, and consequently must have torsional characteristics, in contradistinction to the shaft described in the patent in suit, the essential feature of which is the nontortional tubular characteristic. For these reasons the bill must be and is dismissed, with costs to abide the event.

Decree accordingly.