BEEMS, ADM'R, v. THE CHICAGO ROCK ISLAND & PACIFIC R'Y Co.

1. **Witness:** CREDIBILITY OF: QUESTION FOR JURY. Whether witnesses are worthy of belief is a question for the jury, and not for the appellate court.

2. **Pleading and Evidence:** VARIANCE: STOPPING SPEED OF CARS. An allegation that a signal was given to "stop the speed" of the cars in question *held* to be supported by evidence of a signal which directed a total cessation of motion,—that being what is meant by stopping the speed.

3. **Railroads:** INJURY TO CAR-COUPLER: DUTY OF FIREMAN TO AVERT DANGER AFTER ITS DISCOVERY: INSTRUCTION. Plaintiff's intestate died of an injury received while attempting to couple cars on defendant's road. Plaintiff seeks to recover on the ground that defendant's employes were negligent in moving the cars with too much speed. The

court instructed the jury, in substance, that if the speed of the train was uncommon, and the danger unusual, and the speed was such as to indicate a strong probability that decedent would get hurt when he went between the cars, then it was the duty of the fireman to do whatever he could, by reasonable promptness, to avert the accident after he saw the decedent go into the position of danger. *Held* that the instruction was correct.

4. ——: ——: EVIDENCE: RULES OF COMPANY. Certain rules of the defendant company regarding the duty of train-men in the management of trains construed, and *held* to have been properly admitted in evidence in this case on behalf of plaintiff.

5. ——: USUAL SPEED OF TRAINS: QUESTION FOR JURY. Whether the speed of the train in question was usual and proper under the circumstances was for the jury to determine from the evidence.

6. ——: DEATH OF EMPLOYE THROUGH COMPANY'S NEGLIGENCE: EVIDENCE OF DAMAGES: LIFE TABLES. Where the evidence showed that the deceased, who came to his death through defendant's negligence, was twenty-five years of age, and that he was an active, industrious man, in good health, with a common education, and that at the time of his death he was earning from $40 to $45 per month, these facts were sufficient to authorize an award of substantial damages, without the introduction of life-tables to show the probable duration of decedent's life, had he not been killed; and, in the absence of a claim that the amount awarded was excessive, the verdict should not be disturbed.

*Appeal from Cass Circuit Court.*

THURSDAY, DECEMBER 10.

THIS is an action at law, in which the plaintiff, as administrator of the estate of Joseph Beems, deceased, seeks to recover damages of the defendant upon the alleged ground that the deceased, who was a brakeman in the employment of the defendant, came to his death by reason of the negligence of certain employes of the defendant in the management of an engine, while deceased was attempting to uncouple a car from the tank or tender of the engine. There was a trial by jury, which resulted in a verdict and judgment for the plaintiff for $2,500. Defendant appeals.

*Thos. S. Wright* and *R. G. Phelps,* for appellant.

*A. S. Churchill,* for appellee.

ROTHROCK, J.—I.   It is conceded that plaintiff's intestate was killed at Neola, on the defendant's railroad, by being run over by the wheels of the tender or tank to an engine, while attempting to uncouple a car next to the engine.   He had been in the service of the defendant as brakeman on a freight train for six weeks, previous to which employment he had been for several months acting as a switchman in the yards of the defendant at Atlantic.   The train on which deceased was employed arrived at Neola about five o'clock P. M.   Some switching of cars was to be done, which was participated in by the deceased, the engineer and fireman.   After several movements of cars, there remained attached to the engine two empty box cars, which were to be set back on the side track.   To accomplish this, the engine and two cars were pulled east of the switch opening into the side track, until the hind car was some distance east of the switch, and then the engine and two cars were stopped.   At this time deceased opened the switch, and went eastward to the west end of the tender, or, in other words, to the point of coupling between the tender and car attached to it, thus bringing himself a considerable distance east of the switch.   As he reached this point he stepped between the tender and car, and at the same time the engine and car were started westward, and were moving westward while he was thus between the tender and car.   At this time, also, the engineer was at his place on the south side of the engine, and the fireman was standing on the gangway between the tender and engine, facing towards the brakeman.   After thus going between the tender and car, the deceased came out and moved along in a trot beside the tender, looking toward the coupling, and then went in again between the car and tender, when he was in some way caught under the tender, and his leg was taken off, and he received other injuries, of which he soon afterwards died.   There was no effort made by the engineer or brakeman to check the speed of the train until after the deceased received his injuries.

The above statement of the facts attending the occurrence is taken from appellant's arguments, excepting that the distance in fact, as stated by appellant, which the cars were from the switch when deceased made the two attempts to uncouple the car, and the distance of the point from the switch at which he received the injury, are not given. We have omitted these statements, because there is some conflict in the evidence as to the distances named.

The petition sets forth the negligence complained of as follows: "That it was the duty of the enginemen to obey the signals given by the deceased when engaged in uncoupling and switching cars, and to move the train slowly and carefully in backing into a side track at Neola to leave cars; that deceased was engaged in uncoupling the cars to be left, and that while so engaged, he signaled the fireman and engineer to stop the speed of the defendant's train, which signal they failed to obey, and, instead of stopping the speed, as directed by said signal, said speed was constantly increased, and that, by reason of the neglect to obey the signal of deceased, and the increase of the speed, deceased was caught under the tender and run over, which injury resulted in his death.    *    *    * "

The principal question of fact in the case is whether the deceased signaled the fireman and the engineer when he went between the tender and the car the second time. Two witnesses testify that he made a signal. The fireman testifies that no signal was given. The jury were warranted in finding from the evidence that a signal was given. Without following the argument of appellant's counsel upon the question of the truthfulness of these two witnesses, it is sufficient to say that their credibility was a question for the jury, and it is not for this court to say that the jury were not warranted in giving credence to their testimony. And we may further say that the jury were warranted from the evidence in finding that, if the signal had been obeyed, the deceased would not have been run

1. WITNESSES: credibility of: question for jury.

over and killed. In other words, we hold that the jury were warranted in finding that the time was not so brief between the signal and the injury, and the distance was not so short, that the deceased would have met the same fate if his signal had been observed and obeyed. We deem this sufficient upon the question made by counsel that the verdict is not supported by the evidence.

II. Conceding, as we must, that a signal was given just as the deceased went between the tender and car the second time, an important question for the jury to determine was whether the signal indicated to the brakeman that the engine should be brought to a stop, or whether the speed should be decreased. The witnesses described the signal to the jury by illustrations with their arms. Of course, these illustrations or movements of the arms cannot be reproduced so that we can put ourselves in the place of the jury, and determine what they indicated. Counsel for appellant complain because the defendant was allowed to introduce evidence that the signal was a direction to stop the engine; and from this we infer that the evidence was such as that the jury might find that the signal given by the deceased was a direction to stop. This is claimed to be contrary to the charge of negligence in the petition. We have copied above that part of the petition, and the language used is that the signal was to "stop the speed." Under this allegation we do not think the evidence was objectionable. To *stop the speed* is not to reduce or slacken it. It means to cease or stop the speed altogether. The instructions in which the question is presented to the jury, upon the theory that the signal was such as required the engineer to come to a full stop, are not, in our opinion objectionable nor erroneous. They are in the same line of thought with the petition. This cause has once before been in this court upon appeal, and, in discussing the questions then made, the signal was treated as a direction to decrease the speed; but the question as to a variance in the evidence from the allega-

*2. PLEADING and evidence: variance: stopping speed of cars.*

tions of the petition was not then presented nor considered. See 58 Iowa, 150.

III. The court, among other charges to the jury, instructed as follows: "If the decedent went in between the cars the second time without giving any signal to those upon the engine, one of two things must necessarily be true, either that the train was then being moved at the proper rate of speed and without negligence, or else that the decedent was himself negligent in stepping in without first giving the necessary order or signal to correct its movement; and, in either event, the plaintiff cannot recover unless it should be under a state of facts such as is spoken of in the next paragraph of this charge, being the paragraph numbered nine. (9) One exception to the rule stated in the last paragraph is this: If the fireman from his place on the engine saw the decedent go in between the cars the second time, and knew that the speed of the train and all other circumstances were such as to indicate a strong probability that he would get hurt, it would be the duty of the fireman to do whatever he could, with ordinary promptness, to avert the accident, after he saw the deceased go into the position of danger, even though no signal may have been given him. If he saw and knew of any danger, and had within his reach or at his command the means to avert it, and failed to use such means with reasonable promptness and care, this would be negligence on his part which would make the defendant liable, even though the decedent may have been first negligent in going between the cars as he did. But, if the decedent gave no signal to slacken the speed of the train, or to stop it, and the rate of speed and other circumstances were not such as to suggest immediate or imminent danger to the decedent, then there would be no negligence on the part of those in charge of the engine in taking no steps to avert an accident. If it was a common occurrence in the ordinary course of business for brakemen to go between the cars when moving at

*3. RAILROADS: injury to car-coupler: duty of fireman to avert danger after its discovery: instruction.*

the rate these were going, the parties in charge of the engine would not be obliged to take any steps to avert a danger of which they have no notice or knowledge. If the fireman saw the decedent go in between the cars, and knew from the circumstances that there was unusual danger, the question what the fireman ought to do to avert such danger would depend on the circumstances. If the evidence shows that, on account of the position usually assumed, or sometimes assumed, by brakemen when thus between the cars, a sudden or abrupt stop would or might increase the danger to the brakeman, and if his position could not be seen, then the fireman would only be required to exercise an honest and reasonable judgment as to his duty and what, if anything, was best to be done. If the fireman saw the decedent go between the cars, and the accident occurred so soon after his going in that nothing could be done by the fireman, in the exercise of ordinary care, toward lessening or stopping the motion of the train, or in any other way, in time to avoid the accident, then there would be no liability on this state of fact, and the propositions of law stated in this ninth paragraph of this charge will have no application to this case."

Appellant says that the eighth instruction is manifestly correct, but that the ninth is clearly erroneous. It is insisted that this instruction authorized the jury to find that the fireman was negligent in not using means to avert the danger to the deceased, even if the cars were moving at such speed that it was proper for decedent to make the coupling. Or, to state the objection to the instruction in the language of appellant's argument, they say the purport and meaning of the instruction is that " deceased, possessed of the power to control the speed by use of signals, having determined that the speed was proper, and, the speed being proper, still defendant is liable if, there being any danger, it did not take means to avert it. Moving its cars at a proper rate of speed for the proximate safety of a brakeman charged with the duty of uncoupling them, defendant is still liable if it fails to avert

the danger still existing." In other words, counsel claim that this instruction requires the fireman or engineer, without signal, to stop a train, or reduce its speed, when a brakeman attempts to uncouple cars when the train is moving at a proper rate of speed to perform the act, because all uncoupling of moving cars is attended with some danger.

We have set out the whole of the ninth instruction as the best answer to the argument of counsel. All through the instruction the thought is kept prominent that if the speed of the train was uncommon, and the danger unusual, and the speed was such as to indicate a strong probability that decedent would get hurt, then it was the duty of the fireman to do whatever he could, by reasonable promptness, to avert the accident after he saw the deceased go into the position of danger. As we understand the instruction, it is not vulnerable to the objection made to it.

IV. The plaintiff was permitted, against the defendant's objection, to introduce certain rules of the defendant regarding the duty of train-men in the management of trains. They were in these words: "(1) The general direction and government of trains, from the time of receiving their passengers and freight, is vested in the conductor. Engine-men will be held alike accountable for any violation of the general rules of the company." "(7) Engine-men will use great caution in backing up to take a train, or backing into a side track to take or leave cars, and will approach so slow that they may be coupled without moving the train of cars." "(10) Engine-men or firemen must look back frequently to see that all is right; and, in case a train becomes detached, great care must be taken to keep the forward part out of the way of the detached part, so as to prevent collision." It is urged that rule 7 was improperly admitted, because other evidence in the case showed that there were no cars on the side track which the two empty box cars could collide with, and that the rule has no application to a case like this. But the rule is fairly susceptible of

4. —— : ——:
evidence:
rules of com-
pany.

the construction that great caution is required to be exercised in backing into a side track to take or leave cars, whether they are liable to strike other cars or not. And rule 10 requires engine-men or firemen to look back frequently to see that all is right. It is not restricted to looking back to avoid the consequences of the parting of a train. We think there was no error in admitting the rules in evidence. We approved the same ruling of the court upon the former appeal.

V. It is claimed that the court erred in leaving to the jury the question whether the speed of the train was usual and proper. We think otherwise. There was quite a conflict in the evidence as to the speed at which the train was backing. There was also evidence tending to show what was usual in such cases. It seems to us it was proper to allow the jury to determine the question.

5. ——: usual speed of trains : question for jury.

VI. Next it is urged that there was no evidence of the probable life of the deceased. No life-tables were introduced in evidence, and it is claimed that without such evidence there was no proper basis for the computation of damages. The damages in cases like this never can be accurately estimated. It is the common practice to introduce life-tables that the jury may be advised of the probable duration of the life of a person of the age of the deceased. But, after all, the amount of damages is largely a matter of conjecture. No estimate can be made of the probable illness, sickness and inability to secure employment, nor can it be ascertained therefrom at what period in the prospective life the infirmities of age will reduce the capacity for labor. We do not think that the introduction of life-tables in evidence is essential to the recovery of damages. It is not claimed that the damages awarded to the plaintiff are excessive. The evidence shows that the deceased was twenty-five years of age, and that he was an active, industrious man, in good health, with a common education, and that at the time of his death he was earning from forty to forty-five dollars per month.

6. ——: death of employe through company's negligence: evidence of damages: life-tables.

These facts were sufficient to authorize an award of substantial damages; and, in the absence of the claim that an excessive amount was fixed by the jury, the verdict should be allowed to stand.

AFFIRMED.