EMIL FALT, Appellant, v. CLARENCE KRUG, Appellee.

## No. 47117.

(Reported in 32 N. W. 2d 781)

JUNE 15, 1948.

Yessler & Fahey, Howard McLaughlin, and Edward J. Dahms, all of Cedar Rapids, for appellant.

Tobin & Bordewick, of Vinton, and Elliott, Shuttleworth & Ingersoll, by Harry Wilmarth, all of Cedar Rapids, for appellee.

MANTZ, J.—The case grows out of a collision between a truck owned and operated by Emil Falt and an automobile owned and operated by Clarence Krug. The collision took place on February 26, 1946, at 3:30 p. m., at an intersection of two highways some miles south of Garrison, Benton County, Iowa. Because of such collision, plaintiff brought suit against defendant for damages to his truck, repairs, expenses, and loss of time in use of said truck. When plaintiff rested, defendant moved for a directed verdict. This was sustained, plaintiff's petition was dismissed and judgment rendered against him for costs. Plaintiff has appealed.

I. The grounds of negligence which appellant charges against appellee are six in number and are as follows:

"(a) That he drove his automobile into said intersection at a careless, excessive, and unlawful rate of speed, in excess of 50 miles per hour.

"(b) That he approached said highway intersection, and drove into the same in total disregard of the possible presence of other motor vehicles, or other persons.

"(c) That he approached and drove into said intersection without keeping a lookout, and without looking, and wilfully and negligently permitted his attention to be diverted and directed to other matters than keeping a lookout for the possible person or other motor vehicle upon and within said intersection.

"(d) That the defendant's view was unobstructed for a distance of three hundred (300) feet from said intersection,

and at the top of a grade in the road over which he was traveling, at a point three hundred (300) feet from said intersection.

"(e) That the defendant drove his car negligently and carelessly as aforesaid, into said intersection without seeing the plaintiff's truck until a moment before the collision, and at which time he turned his automobile to the right and drove into and upon plaintiff's truck.'

"(f) That the defendant, in approaching and driving into said intersection as aforesaid, failed to have his automobile under control, and did not reduce his speed to a proper and reasonable speed in crossing an intersection."

Appellee, answering, admitted the collision and damages to both vehicles, and that it took place at a highway intersection. He denied that he was in any manner negligent, also denied that appellant at the time and place in question was free from contributory negligence and that any claimed negligence charged against appellee was the sole and proximate cause of the said collision and the damage to appellant.

When appellant rested appellee moved for a directed verdict against appellant. The principal grounds thereof were that appellant failed to show that appellee was guilty of actionable negligence, and that the evidence showed as a matter of law that appellant was guilty of negligence. The motion was sustained and this appeal followed.

The correctness of this ruling is the only matter involved in this appeal. Our conclusion is that the court erred in sustaining such motion.

Four errors are set forth and relied upon for reversal of the ruling of the trial court in directing a verdict against appellant. Boiled down they are that the court erred in finding that the plaintiff was guilty of contributory negligence as a matter of law; also, that the ruling of the trial court foreclosed him in presenting to the jury the question of whether he acted as a man of ordinary prudence in attempting to cross said intersection in the exercise of due care. Appellant states that the various errors are so correlated that they are argued in one division.

Appellee in brief and argument to sustain the ruling of the trial court sets forth two propositions:

First: That plaintiff not only failed to prove his freedom from contributory negligence but that it affirmatively appeared that he was guilty of contributory negligence and under the record it was the duty of the court to direct a verdict against him.

Second: That the doctrine of last clear chance was of no avail to appellant.

As to the last proposition we agree with appellee. Under the record that doctrine had no application. Appellant did not plead such doctrine and therefore it is not available to him. Phelan v. Foutz, 200 Iowa 267, 204 N. W. 240; Nyswander v. Gonser, 218 Iowa 136, 253 N. W. 829; Steele v. Brada, 213 Iowa 708, 239 N. W. 538.

Our ruling that the doctrine of last clear chance is not available under the pleadings is not to be construed as indicating it would be applicable in this case if pleaded.

II. Before setting out the legal principles applicable we will briefly outline from the record certain facts shown therein. About 3:30 p. m., February 26, 1946, appellant was driving his truck loaded with crushed rock southward on a graveled highway. He was proceeding upgrade. Part way up the hill an east-and-west dirt highway intersected the graveled road. Each of these highways was 66 feet wide and the traveled parts thereof were from 20 to 30 feet. The road to the west had a downgrade toward the intersection. This grade extended westward something like 200 to 250 feet to a small knoll or hill. The intersection was visible from that point. There were a few trees at or near the intersection but at that time of year they did not obstruct the view to any extent. As appellant approached the intersection appellee was proceeding eastward toward that point. He was driving his own automobile. Appellant drove his truck into the intersection and when close to the south side thereof was struck by appellee's automobile, being struck about the rear wheel, the impact shearing off the dump body of the truck. The truck was turned over, two tires were blown out, rear springs broken, hydraulic lift was bent and cracked, and the frame was damaged beyond repair. After the

impact the truck turned over and came to rest about 40 feet south and facing north. A passenger, Mrs. Victor Sunburg, was riding in appellee's automobile and when the collision occurred was thrown from such vehicle and suffered serious injuries.

Appellant testified that he was traveling about 25 miles per hour as he approached the intersection and that just as he entered it he reduced his speed to about 20 miles per hour; that before doing so he looked ahead and to the east and west and saw no vehicles approaching—nothing was in sight. We quote from his direct examination:

"Q. Now, you say you looked both east and west just when you entered the intersection and you didn't see anybody? A. Yes. Q. When was the very first intimation you had of another vehicle? A. Just as I entered the intersection. Q. Where was this other vehicle at that particular minute? A. He was up the road between 150 and 180 feet. Q. What direction was he coming? A. He was traveling east. He was coming from the west traveling east. Q. How wide is that east-and-west highway there, if you know? A. I think it is 60 feet, or 67 feet. Q. Probably 66? A. Sixty-six. * * * Q. What did you do, Mr. Falt, immediately upon first discovering this other automobile about 150 feet west, you testified to? A. I proceeded across, on across. As I said, threw it in third gear and proceeded on across. I thought I had plenty of time to proceed across. * * * Q. About how many feet did you actually have to travel, Mr. Falt, from the time you entered that intersection at the north line, if projected, to get across the highway running east and west? A. I would say 66 feet. Q. Sixty-six feet. And did you believe, or did you not believe, you had ample time to cross there before the approaching car from the west reached the intersection? A. Yes, I believed I would have ample time to cross the intersection. Q. You proceeded to go across, did you? A. Yes. Q. How far did you go with your truck before anything happened going across that intersection? A. I would say I traveled 40 feet, 40——between 40 and 50 feet over that, it seemed, before anything happened."

Appellant testified that he was between 40 and 50 feet into the intersection at the impact; also that appellee's automobile

was proceeding eastward towards the intersection at a speed of around 60 miles per hour; that he observed no change in the speed of the appellee's car as it approached the intersection; that appellee gave no signal as he proceeded eastward.

We set out parts of the cross-examination of appellant with reference to what he did as he came up to and entered the intersection:

" * * * I looked to the west before I got to the intersection, and I also looked when I got to the intersection; I first looked to the west two or three hundred feet back from the intersection; from that point on, I looked to the right, west and looked to the east and I didn't see nothing coming and as I proceeded on I got into the intersection and I seen this here automobile bearing down the road and I knew that I should have plenty of time to get through the intersection. I thought he was coming through the intersection before I entered the intersection, but I misjudged his speed.' Q. You entered that intersection misjudging the speed of the car which you saw bearing down on you from the right, did you? A. Not exactly, no. * * * A. I say I did misjudge on this—I can't—because I was in the intersection and I seen him up the road 150 feet or so * * *. As I entered the intersection, I saw a car coming from the west, he was 150 to 180 feet from the intersection at the time, and I was going south on a grade which was a rise of 20 to 30 feet. * * * When I shifted gears, I was looking to the right; there was a slight grade to the west; I would say the rise ran about 180 feet from the intersection back west; my feeling is that it is close to a thirty per cent grade; the car 180 feet back west from the intersection would be approximately 50 feet higher than the same car if it was in the intersection, that is the elevation I think would be correct. Then, from that point 180 feet west of the intersection, the road continues level on the west for some distance. I would not say 180 feet to 200 feet, there is a slight down dip on the west of the hill where it goes down slightly; I don't know how far it is, quite a long way. The road to the west of the intersection rises about 50 feet approximately 180 feet west of the intersection, right around that neighborhood, that is the knoll I am speaking about. The

two roads are both graded up well; it has a prominent ditch on each side of the west road as it comes from Van Deusen's house to the intersection."

The appellant was the only eyewitness to the collision. As we read his testimony we note that there are some conflicts therein, but a careful study of his entire testimony shows that these conflicts were more apparent than real. We think that from his evidence the jury could fairly find that in operating his truck and approaching and entering into the intersection he acted in a reasonably careful and prudent manner. He testified that back of the intersection he looked to the west and saw no vehicle approaching; that as he came to the intersection he again looked and saw no vehicle approaching; that he shifted gears and proceeded onward and as he was out into the intersection he looked to the west and saw appellee's car approaching about 150 to 180 feet to the westward; that he thought he had ample time to clear the intersection before appellee reached such intersection and that he proceeded onward.

III. Was there evidence showing negligence on the part of appellee? We think that the jury could so find. He was approaching the intersection from the west, while appellant was approaching from the north. Appellee in approaching the intersection had a statutory duty to perform. Section 321.288, Code of 1946, provides in part as follows:

"The person operating a motor vehicle * * * shall have the same under control and shall reduce the speed to a reasonable and proper rate:

"(3) When approaching and traversing a crossing or intersection of public highways * * * or a steep descent, in a public highway."

We hold that there is evidence which affirmatively shows a failure of appellee to observe both of the requirements of the above-quoted statute. Appellant testified that as the appellee approached the intersection from the west he came down a steep descent; that he was traveling at a speed of about 60 miles per hour; that he did not slacken his speed, and that his car was out of control. The evidence of the collision, the place

where appellant's truck was struck, the damage done to such truck, could readily raise an inference that appellee was traveling at a high rate of speed. A failure to observe the above statute would be negligence. On this point see Wood v. Branning, 215 Iowa 59, 244 N. W. 658; Dillon v. Diamond Products Co., 215 Iowa 440, 245 N. W. 725; Grover v. Neibauer, 216 Iowa 631, 247 N. W. 298; Lang v. Kollasch, 218 Iowa 391, 255 N. W. 493; Wimer v. M. & M. Star Bottling Co., 221 Iowa 120, 264 N. W. 262.

■ IV. Under the record did appellee have the right of way?

It is appellee's claim that the appellant was negligent in that he failed to yield to appellee the right of way in that he was approaching from the right and under section 321.319, Code of 1946, was given that right and appellant's failure to observe such statute rendered him negligent. Said section is as follows:

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way."

The two highways were of equal class; there were no stop signs at the intersection.

As to which vehicle had the right of way at the intersection, we hold was a fact question under the record in this case. Appellant testified that back of the intersection and as he came to it he looked to his right and saw no approaching vehicle; that as he proceeded into the intersection he looked to his right and saw appellee's vehicle approaching from the west at a distance of 150 to 180 feet; that he thought that he had time to get across; that as he was nearly through the intersection his truck was struck at about the rear wheel. We hold that under the record the appellee was not entitled to the right of way at the intersection as a matter of law; also, that under such record appellant in proceeding to cross such intersection was not guilty of contributory negligence as a matter of law. Under the record we think that it was a question of fact as to which

of the parties had the right of way. See Pestotnik v. Balliet, 233 Iowa 1047, 10 N. W. 2d 99; Davidson v. Vast, 233 Iowa 534, 10 N. W. 2d 12.

 V. Was there evidence in the record from which it could be found that appellant was not guilty of contributory negligence in proceeding to cross the intersection at the time and place in question? We have frequently held that the existence of contributory negligence is peculiarly a jury question. We have heretofore set out and referred to some of the evidence showing what the appellant did as he approached, entered into, and proceeded to cross, the intersection. The nature of the evidence is such that it is not a case where the evidence shows that in what he did the appellant was negligent as a matter of law. Where the facts are in dispute and reasonable minds searching for the truth could arrive at different conclusions, then it is a question of fact rather than of law. See Barnes v. Barnett, 184 Iowa 936, 169 N. W. 365; Lawson v. Fordyce, 234 Iowa 632, 641, 12 N. W. 2d 301, 306. In the last-cited case Bliss, J., set out and reviewed many Iowa cases dealing with the matter of contributory negligence and proximate cause. Therein he quotes from the opinion in the case of Fitter v. Iowa Tel. Co., 143 Iowa 689, 693, 121 N. W. 48, 50, as follows:

" 'Proximate cause and contributory negligence are questions for the jury, save in very exceptional cases where the facts are so clear and undisputed, and the relation of cause and effect so apparent to every candid mind, that but one conclusion may be fairly drawn therefrom.' "

We do not think it necessary to cite any further authorities.

We hold that the trial court erred in holding that appellant was guilty of contributory negligence as a matter of law, in crossing the intersection. We hold that such question and that of proximate cause should have been submitted to the jury. Lawson v. Fordyce, supra.

VI. The matter of the damages to appellant's truck does not seem to be seriously questioned. As that matter was not mentioned in the motion for directed verdict or in appellee's brief, we will not discuss it. As the case is reversed, the matter of damages can be taken up in case there is a retrial.

Our conclusion is that under the record in this case the trial court erred in directing a verdict against appellant. We hold that there was evidence from which the jury could have found in his favor. The case is reversed.—Reversed.

All JUSTICES concur.