GLEN R. BROWN, appellee, v. LOREN FREDERICK GUITER, appellant.

No. 51296.

(Reported in 128 N.W.2d 896)

June 9, 1964.

Harold G. DeKay, of Atlantic, for appellant.

674

Jones, Cambridge, Carl & Howard, of Atlantic, for appellee.

THORNTON, J.—This is an intersection case. Plaintiff's action is to recover for injuries received in an intersection collision with defendant. The collision occurred at 9:45 a.m., January 2, 1960, at the intersection of Walnut and Eighth Streets in Atlantic. Plaintiff was driving south on Walnut Street, defendant was driving east on Eighth Street. Defendant was on plaintiff's right. The jury returned a verdict of $3500 for plaintiff. Defendant's motion for judgment notwithstanding the verdict and for a new trial was overruled and he appeals.

■ Defendant-appellant's brief and argument does not conform to rule 344, Rules of Civil Procedure, particularly to rule 344(a)(4)(First) in that the brief and argument does not contain references to the pages and lines of the record to show fully the manner in which the error arose and the ruling of the trial court thereon. Attention is directed to this, not only because we would be justified in refusing to consider defendant's brief and argument, but because of the reason for the rule, to insure not only that the appellee but this court will know and understand the exact question the appellant wishes to present.

In this case it is apparent able counsel for plaintiff-appellee has in no way been misled by defendant-appellant's brief and argument, though it is evident extra time and work were involved in preparing to meet appellant's argument as presented. See Jerrel v. Hartford Fire Insurance Co., 251 Iowa 816, 817, 103 N.W.2d 83, 80 A. L. R.2d 1281; and Agans v. General Mills, Inc., 242 Iowa 978, 980, 48 N.W.2d 242.

I. Defendant contends the trial court was in error in striking his amendment to his answer filed two minutes before the trial was to start, and a double standard was applied when the court allowed plaintiff to amend to conform to the proof to include permanent injury.

■ The situation arose as follows: The action was started in August of 1961; after preliminary motions an answer was filed January 15, 1962; on February 3, 1962, defendant amended his answer to plead a release given by defendant on April 15, 1960; the pleading did not state to whom the release was given

(defendant indicates this was a stenographic error); plaintiff's motion to strike, filed February 27, 1962, was sustained on April 5, 1963. On May 13, 1963, defendant, at 9:28 a.m., when the jury was called for 9:30 a.m., filed his amendment to his answer alleging the release was obtained by plaintiff from defendant. The stenographic error was corrected. As we read the trial court's ruling it denied leave to file the amendment as not being timely. Defendant does not contend he neglected to file the amendment through oversight or offer any excuse. It is apparent knowledge of the release was available to defendant since its date, April 15, 1960, he knew of the defect in his pleading, the omission of to whom the release was given, from the date of the filing of plaintiff's motion to strike, February 27, 1962. Though the record does not show it, we are fair in assuming defendant knew of the trial date for some time before May 13, 1963. During all this time he has done nothing to press this affirmative defense or take steps to see it would be properly presented. In fact, after the court sustained the motion to strike defendant's first amendment on April 5, 1963, defendant, if he intended to follow rules 85 and 86, Rules of Civil Procedure, should have filed the amendment within seven days.

■ Liberality in permitting amendments is the general rule, however, this liberality has limits. Determination of such limits is vested in the sound judicial discretion of trial courts. We do not interfere unless an abuse of discretion appears. In considering this question we take into consideration that trial courts are charged with the duty of conducting orderly and expeditious jury trials. Under the record made here we cannot hold the denial of this amendment was an abuse of discretion. Briney v. Tri-State Mutual Grain Dealers Fire Insurance Co., 254 Iowa 673, 679, 117 N.W.2d 889, 892; Russell v. Chicago, Rock Island and Pacific Railroad Co., 251 Iowa 839, 844, 845, 102 N.W.2d 881, 885, and citations; and Mundy v. Olds, 254 Iowa 1095, 120 N.W.2d 469.

■ Defendant's claim a double standard was applied in allowing plaintiff to amend to conform to the proof to include permanent injury is answered in Russell v. Chicago, Rock Island and Pacific Railroad Co., 251 Iowa 839, 845, 102 N.W.2d 881,

885. There is no inconsistency in the two rulings. Defendant's amendment was an issue-changing defense of which he had ample knowledge. The record shows plaintiff's counsel was not advised of the permanent nature of plaintiff's injury until during the trial. Defendant was given immediate opportunity to, and did, have plaintiff examined by his physician. This physician did testify the injury was permanent.

II.   Defendant contends a verdict should have been directed for him on the issue of plaintiff's contributory negligence and defendant's negligence. He presents these matters in different divisions. A review of the testimony of plaintiff and defendant will show a proper case for the jury was made on the issues of contributory negligence and speed, control and lookout. The evidence showed Walnut and Eighth Streets intersected at right angles. The width of the paved portion of Walnut Street north of Eighth Street was 40.5 feet. The paved portion of Eighth Street was 24.5 feet wide. The residential speed limit of 25 m.p.h. was applicable. The streets were icy, the weather clear. There were no traffic control or stop signs at the intersection. Plaintiff testified he was driving south on Walnut at 15 m.p.h. when he was 20 feet north of the curbline on Eighth Street he saw defendant's car at the first driveway west of the intersection. A plat in evidence shows this driveway is approximately 100 feet west of the intersection. Plaintiff did not again see defendant's car until he was three feet from the point of the collision between the two cars in the southwest quadrant of the intersection. Plaintiff testified he formed no opinion as to the speed of defendant's car, and that when he saw defendant's car by the driveway, when he, plaintiff, was 20 feet north of the north curbline of Eighth Street, "I just never dreamt of anything happening. I just never tried to stop. * * * there was no reason to stop. I was going and thought I had plenty of time."

Defendant testified he was driving east in the south lane on Eighth Street at 15 to 17 m.p.h., that when he was 20 feet west of the west curbline of Walnut Street he saw plaintiff approximately 40 feet north of the north curbline of Eighth Street, "plaintiff * * * was rapidly approaching." Defendant also testified he applied his brakes when he first saw plaintiff and had

him in view until the impact. His car did not slow down due to the ice.

There is a dispute as to the manner in which the cars came together. The jury could find either plaintiff's right-front fender and defendant's left-front fender was the first point of contact or that plaintiff's front first struck defendant's left-front door. Plaintiff's car came to rest facing north in the west lane of traffic in Walnut Street with the back end about 20 feet north of the north curbline of Eighth Street. Defendant's car came to rest on the lawn of the home on the southeast corner of the intersection heading southeasterly. The front of defendant's car was within a few feet of the house.

■ From the foregoing it is apparent the issue of plaintiff's contributory negligence was for the jury. Defendant, on the right, had the directional right-of-way under the provisions of section 321.319, Code of Iowa, 1958. It provides, "Where two vehicles are approaching * * * so that their paths will intersect and there is danger of collision, the vehicle * * * from the right shall have the right of way."

■ It was plaintiff's duty to be prepared to yield the right-of-way. He had a right to assume others would obey the law. Beezley v. Kleinholtz, 251 Iowa 133, 137, 100 N.W.2d 105; and Culbertson v. Anderson, 251 Iowa 265, 268, 100 N.W.2d 633. As he viewed the situation he knew their paths would intersect, so our question is simply, was there danger of collision? Was his assumption he had plenty of time a reasonable one? Of course, he may testify to this state of mind. Wigmore's Code of Evidence, Article 3, section 599, page 133.

If plaintiff's testimony is believed, and the jury did, it could properly be found he observed a car 100 feet away from the intersection when he was 20 feet away, and approximately 35 feet from the point of intersection of the paths the cars were then following, as well as he thought he had plenty of time to cross the intersection. Certainly we cannot say as a matter of law his assumption he had plenty of time was unreasonable. Beezley v. Kleinholtz, 251 Iowa 133, 137, 100 N.W.2d 105; Culbertson v. Anderson, 251 Iowa 265, 268, 100 N.W.2d 633; Beardsley v. Hobbs, 239 Iowa 1332, 34 N.W.2d 916; and Falt

v. Krug, 239 Iowa 766, 32 N.W.2d 781. Bearing on the duty of a driver having the statutory right-of-way, see Batliner v. Sallee, 254 Iowa 561, 565, 118 N.W.2d 552, quoting from Paulsen v. Haker, 250 Iowa 532, 537, 539, 95 N.W.2d 47.

III. Again if plaintiff's testimony is believed, it is apparent plaintiff was in plain view of defendant, defendant traveled more than twice as far as plaintiff, with plaintiff's speed at 15 m.p.h., the icy condition of the street, and defendant took no steps to avoid the collision. This and the fact defendant drove into or immediately in front of plaintiff's car are evidence of negligence in regard to speed, control and lookout on the part of defendant. Sections 321.285 and 321.288, Code of Iowa, 1958; and Kuehn v. Jenkins, 251 Iowa 718, 724–726, 100 N.W.2d 610. All of these, speed, control and lookout, may be shown by circumstantial evidence. Youngs v. Fort, 252 Iowa 939, 109 N.W.2d 230; Mathews v. Beyer, 254 Iowa 52, 116 N.W.2d 477; and Falt v. Krug, 239 Iowa 766, 32 N.W.2d 781.

IV. Defendant's next contention is the court erred in failing to instruct on sudden emergency, he ties this argument in with control. He apparently urges if the defendant must have his car under control, the approach of plaintiff to the intersection was a sudden emergency. The other circumstance was the icy condition of the road. Defendant, of course, had no control over either, but he knew of the icy condition of the street long before he reached the intersection, it was in no way sudden. Likewise, the approach of another car is to be expected at an intersection. In Young v. Hendricks, 226 Iowa 211, 215, 283 N.W. 895, 898, we said:

"An emergency has been variously defined as (1) an unforeseen combination of circumstances which calls for immediate action; (2) a perplexing contingency or complication of circumstances; (3) a sudden or unexpected occasion for action; exigency; pressing necessity. 20 C. J. 499; U. S. v. Sheridan-Kirk Contract Co., D. C., 149 F. 809."

Defendant does not come within any of these and he cites no authority so holding. See Murray v. Lang, 252 Iowa 260, 106 N.W.2d 643; and Winter v. Moore, 255 Iowa 1, 121 N.W.2d 82.

V. Defendant contends it was error for the court to

refuse to instruct on the duty of plaintiff to use his horn at the intersection. Section 321.432, Code of Iowa, 1958, in part, provides, "The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway." Defendant recognizes the legislature did not intend a motorist should use his horn at every intersection. See also section 321.329, Code of Iowa, 1958. He contends such instruction was proper because the intersection was a blind corner. There was a large tree and a house on the northwest corner. The house and tree were there but neither so obstructed the view as to make the corner a blind one. In fact neither plaintiff nor defendant contended at the trial the collision was caused by an obstructed view. Under either plaintiff's or defendant's version of the collision and position of the car when first seen, the use of a horn would have been of no help. Under plaintiff's version as it appeared to him there was no need for him to blow the horn, and under defendant's version the same is true. Failure to sound a horn would not under the evidence be a proximate cause or a contributing. cause. Defendant cites a number of cases bearing on sounding a horn, the only one in point factually is Lauxman v. Tisher, 213 Iowa 654, 657, 239 N.W. 675, which holds contrary to defendant's contention. The only point of a horn is to call attention to the motorist's presence.

VI. During the cross-examination of plaintiff, defendant asked him to mark his position on a plat then in evidence when he first observed defendant and defendant's position at that time. Objection that it was not proper cross-examination was sustained. The witness should have been required to answer. However, this was not reversible error. The information had been testified to by plaintiff earlier in his cross-examination without reference to the plat. Lewis v. Baker, 251 Iowa 1173, 1180, 1181, 104 N.W.2d 575.

VII. The court sustained plaintiff's objection to a question asking the opinion of a police officer of the speed of the cars at the time of the collision based on his observations at the scene after the collision and his experience. The ruling was correct. The only qualifications shown were that the witness had

been a policeman for nine years and investigated automobile accidents five and a half years. The witness was not shown to be qualified as an expert on speed. He was not shown to possess any expert knowledge which he could apply to physical facts observed by him to make the requested determination. Hardwick v. Bublitz, 254 Iowa 1253, 1259, 119 N.W.2d 886; and Roberts v. Koons, 230 Iowa 92, 96, 296 N.W. 811. In Davis v. Zucker, 106 N.E.2d 169, 172 (Ohio App., 1951), cited by defendant, we find, "The officer in the first instance gave evidence of his qualifications as an expert on this subject." And in White v. Zutell, 263 F.2d 613, 614, also cited by defendant, we find, "Smith's qualifications to make this estimate were properly established at the trial."

VIII. Defendant contends it was error to submit the question of property damage to the jury because there was no showing the repairs made were caused or necessitated by this accident. Defendant did stipulate, "* * * if a qualified witness would appear * * * he would testify * * * and that the fair and reasonable value of the necessary repairs * * * was $702.39." Whether defendant stipulated more than he intended to, we do not know, but when he stipulated to "the necessary repairs" he stipulated himself out of court on the issue he now raises. "The necessary repairs" as contained in the stipulation refer to the subject matter of this lawsuit. Any other import thereof is wholly unreasonable. The trial court and plaintiff so understood the stipulation and so do we. In Swiger v. Eden, 238 Iowa 44, 49, 24 N.W.2d 793, 795, we quote with approval from 50 Am. Jur., Stipulations, section 8, in part as follows:

"As a general rule, stipulations should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in the furtherance of fair trials upon the merits, rather than a narrow and technical one calculated to defeat the purposes of their execution."

IX. The trial court submitted the issue of permanent injury to the jury. Defendant contends this was error because the only testimony is the fact plaintiff was permanently injured,

there is no showing as to loss of earnings, no showing as to the age of plaintiff or his life expectancy.

There is no merit in this contention. Plaintiff's and defendant's doctors both testified the injury to plaintiff's knee was permanent. Defendant's doctor referred to plaintiff as a 53-year-old man, so actually his age was before the jury. There was no showing as to plaintiff's life expectancy, however the jury saw plaintiff not only when he testified but during the entire trial. Though evidence of life expectancy would be proper and helpful, without it the jury could base their judgment on his age and appearance.

Loss of future earning capacity is a proper element of permanent injury but failure to show such loss does not prevent recovery for the permanent injury alone. Defendant cites Grant v. Thomas, 254 Iowa 581, 118 N.W.2d 545; Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 107 N.W.2d 85; Jurgens v. Davenport, Rock Island and Northwestern Railway Co., 249 Iowa 711, 88 N.W.2d 797; Harms v. Ridgeway, 245 Iowa 810, 64 N.W.2d 286; and Miller v. McCoy Truck Lines, Inc., 243 Iowa 483, 52 N.W.2d 62. These cases deal with loss of earning capacity, and the Grant case points out loss of earning capacity is an element of permanent injury. In the Shover case at page 722 of 252 Iowa, page 94 of 107 N.W.2d, we said, "We have held impairment of physical capacity in itself may be presumed to impair the general earning capacity of the person injured."

The introduction of life tables or other direct evidence of expectancy is not essential to the recovery of damages for permanent injury. Willis v. Schertz, 188 Iowa 712, 718, 175 N.W. 321; and Beems v. The Chicago, Rock Island & Pacific Ry. Co., 67 Iowa 435, 443, 25 N.W. 693. The jury can from observing plaintiff at the trial base an award on such information as is obtained in that manner. And it has been held it is not necessary to show the age of plaintiff if he is present at the trial. Indian v. Delaware, L. & W. R. Co., 262 Pa. 117, 104 A. 871.

X. In final argument defendant was not permitted to argue the failure of plaintiff to call Doctor Anderson. He urges this as error on the ground the privilege had been waived

by plaintiff in calling Doctor Petersen and by reference to Doctor Anderson in the testimony of Doctor Petersen and plaintiff. This does not amount to a waiver of the privilege afforded plaintiff by section 622.10, Code of Iowa, 1962. For the calling of one physician to amount to a waiver as to another physician, the physicians must be consulting physicians engaged in a unified course of treatment. Woods v. Incorporated Town of Lisbon, 150 Iowa 433, 130 N.W. 372. The calling of one of a number of physicians acting independently and successively on the same injury or illness does not constitute a waiver. Baxter v. The City of Cedar Rapids, 103 Iowa 599, 604, 605, 72 N.W. 790; Jacobs v. City of Cedar Rapids, 181 Iowa 407, 164 N.W. 891; Johnson v. Kinney, 232 Iowa 1016, 7 N.W.2d 188, 144 A. L .R. 997; and Pearson v. Butts, 224 Iowa 376, 276 N.W. 65. In this case there is no evidence the doctors were engaged in a unified course of treatment. Doctor Petersen took care of plaintiff's knee injury suffered in the collision in this case. It may have been that Doctor Anderson did remove a cast from the knee but not in conjunction with or in consultation with Doctor Petersen. Doctor Anderson was consulted by plaintiff for plastic surgery wholly unrelated to the knee injury. The ruling of the trial court was correct. Howard v. Porter, 240 Iowa 153, 35 N.W.2d 837.

The case is affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.