CITY OF CEDAR RAPIDS,
Iowa, Appellant,

v.

John Nelson MOSES, Appellee.

No. 56496.

Supreme Court of Iowa.

Nov. 13, 1974.

David F. McGuire, City Atty., and James M. Redmond, Asst. City Atty., for appellant.

John M. Bickel of Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

MASON, Justice.

The issue presented by plaintiff's appeal is whether it is negligence as a matter of law for an emergency vehicle traveling in a proper lane of a multilane street of a city or town providing for two-way movement of traffic to cross the center line to the left and proceed to travel the wrong way in a lane providing for movement of traffic in the opposite direction. The appeal arises from a law action brought by the City of Cedar Rapids to recover property damages to one of its two-wheeled police patrol motorcycles as a result of a collision between the motorcycle and a Pontiac automobile owned and being driven by defendant, John Nelson Moses.

First Avenue in Cedar Rapids at the points and time material here was a multilane street running in a general easterly and westerly direction. There were two lanes separated by broken white lines for eastbound traffic and two lanes for westbound traffic separated in a similar manner, plus a center turn lane referred to in the record as "the storage lane." The lanes provided for eastbound traffic were separated from those provided for westbound traffic by two solid yellow lines.

About 11:15 a. m. April 23, 1969, while checking limit parking zones in the city James Gillen, an officer assigned to motorcycle patrol for the traffic division of the Cedar Rapids Police Department, received a radio call directing him to assist at an accident at a shopping center. As Gillen entered First Avenue at 35th in response to the order he was informed by another call that an ambulance was in route and a woman was pinned under a trailer. Considering this then to be an emergency run Gillen turned on the red light and siren of the motorcycle at this point and proceeded east in the direction of the shopping center traveling in the center of the street in the "storage lanes" because of the double lanes of traffic in the eastbound lanes.

At 38th Street there were three lanes of moving traffic to Gillen's right, two in the eastbound lanes and one in the left turn lane. After stopping momentarily Gillen traveled through the intersection continuing east. Shortly after crossing the intersection he encountered rubber cones in the street which had been placed there by the engineering department to mark lines which had just been painted. Ordinarily the police department does not receive any communication from the engineering department regarding the locations where they are painting lane marking lines. Gillen turned left of these cones since they present a hazard to a motorcycle although not to an automobile. We are told in the record if a motorcycle were to collide with one of the cones it would undoubtedly put the cycle on the ground.

As Gillen traveled east from 38th Street he was from two to five feet left of these cones in a westbound lane, that is, proceeding up the wrong side of the street. He continued in this line of travel to 40th Street where the collision occurred.

Moses and his fiance had been traveling east on First Avenue since 17th Street intending to stop for lunch at McDonald's located on the north side of First Avenue at 40th Street. When they reached 38th Street Moses stopped for a traffic light. As

he proceeded east on First Avenue from this intersection he saw the cones indicating wet paint, slowed down and put his left turn signal on. According to Moses they had stopped painting about a half a block from 40th Street which would enable him to pull into the "storage lane" for left turns at 40th Street since there were no cones at that point. Moses said he was traveling only two or three miles per hour when he turned into the "storage lane." He then began his left turn into McDonald's and was only a few feet from the driveway when the collision occurred. The impact occurred in the inside west lane as the motorcycle struck the Moses car in the area of the left front wheel.

Plaintiff had alleged defendant's negligence in one or more of several particulars was a proximate cause of the collision and damages to its motorcycle. Defendant in answer admitted some allegations and denied others. He specifically denied each and every specification of negligence asserted by plaintiff and the allegation as to proximate cause of the collision.

Defendant also asserted as an affirmative defense plaintiff and its employees were negligent in one or more of five particulars which was a proximate cause of the collision. In one specification defendant asserted plaintiff was negligent in driving the motor vehicle to the left of the center line in violation of section 321.297, The Code.

All references to statutes in this opinion are from The Code, 1966.

Trial was to a jury. At the conclusion of plaintiff's case defendant moved to strike certain allegations of plaintiff's petition, some of which the plaintiff withdrew or requested permission to amend to conform to proof. The court reserved ruling on some portions of defendant's motion to strike other allegations of plaintiff's petition and overruled the balance of the motion. Defendant's motion for a directed verdict was also overruled.

At the close of all evidence the court ruled on defendant's earlier motion striking one of the specifications of negligence alleged by plaintiff and limiting the use of another. Various motions to strike, to conform to proof and defendant's renewed motion for directed verdict were overruled and the matter was submitted to the jury which returned a defendant's verdict.

In instruction 16 the jury was told the operator of a motor vehicle, in cities and towns, was required to travel on the right-hand side of the center of the street and that a failure to comply with this provision of the law constituted negligence. The jury was further told this requirement did not apply to the operator of a motor vehicle turning his vehicle left across the center of a street to enter a private drive.

The court's instruction (17) on legal excuse will be considered later.

In another instruction the jury was told the driver of an authorized emergency vehicle responding to an emergency call shall not assume any special privilege under the law except the privilege granted in approaching a red or stop sign or signal to pass such sign or signal cautiously (section 321.231) and the privilege to exceed speed limitations (section 321.296).

In motion for new trial plaintiff maintained the court erred in failing to give its requested instruction on legal excuse and in its interpretation of various sections of chapter 321, The Code.

The court overruled the motion pointing out it had failed to find any special privilege for the driver of an emergency vehicle in passing or in driving in the wrong traffic lane.

I. It is conceded Gillen was traveling east in the inside lane for westbound traffic left of the center line dividing the lanes for eastbound and westbound traffic at the time of the accident. It is also conceded plaintiff's motorcycle in this instance was an authorized emergency vehicle and that Gillen was making an emergency run in answering the call to the shopping center.

The trial court held this to be a violation of section 321.297 and was negligence as a matter of law and instructed the jury accordingly.

This statute as then in force provided:

"Traveling on right-hand side. The operator of a motor vehicle, in cities and towns, shall at all times travel on the right-hand side of the center of the street."

It has been since repealed and a substitute enacted. See Acts of First Session of the Sixty-fifth General Assembly, chapter 216, section 1.

The former statute was made applicable to governmental vehicles by section 321.230 which provides:

"Public officers not exempt. The provisions of this chapter applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by the United States, this state or any county, city, town, district, or any other political subdivision of the state, subject to such *specific exceptions* as are set forth in this chapter with reference to authorized emergency vehicles." (Emphasis supplied).

The specific exceptions granting special privileges are:

Section 321.231 "Emergency vehicles. The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal."

Section 321.296 "Emergency vehicles— speed. The speed limitations set forth in this chapter shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the streets, nor shall it protect the driver of any such vehicle from the consequence of his negligence."

As indicated, the trial court in instruction 18 informed the jury of the existence of these two privileges.

Plaintiff contends that in addition to the two "special privileges" recognized by the trial court in its instructions section 321.324 constitutes a third "special privilege," to be exercised by an emergency vehicle when making an emergency run which the trial court ignored. Plaintiff argues that therefor the court erred in interpreting chapter 321, The Code, as prohibiting authorized emergency vehicles from traveling to the left of the center line of a multilane street in cities and towns when making emergency runs.

In Kisling v. Thierman, 214 Iowa 911, 915, 243 N.W. 552, 554, it is said:

"We think the most satisfactory rule would be that, except where by statutory provision it is otherwise *specifically* provided, the failure to obey any of the provisions of the statutes or ordinances providing the manner, method of the use, and operation of vehicles on the highways, including streets, together with any provisions therein governing the equipment of vehicles and the use thereof, should be held to be negligence, and not prima facie evidence of negligence.

" * * *

" * * * [W]here the statute or ordinance has fixed the standard of care, the failure to observe such standard is negligence, and when in the trial of a case * * it is shown that the defendant failed to observe the standard of care thus fixed, a case is made for the jury in the first instance. In such case, the defendant may offer proof excusing his failure to observe such legal standard of care. If, however, he fails to furnish proof of such legal excuse, then it is accurate to say that negligence is established as a matter of law." (Emphasis supplied)

■ Since that decision in 1932 this court has consistently held that with the exception of violation of section 321.298 requiring vehicles meeting each other to give half the traveled way by turning to the right, which constitutes merely prima facie negligence, violation without legal excuse of other statutes regulating the law of the road is negligence per se or as a matter of law. Lemke v. Mueller, 166 N.W.2d 860, 866 (Iowa 1969).

Thus, in order for plaintiff to avoid a holding it was negligent per se, it must either point to another statutory provision which "specifically" provides otherwise, or "offer proof excusing his failure to observe" the legal standard. See *Kisling,* 214 Iowa at 915, 243 N.W. at 554.

Plaintiff first seeks to avoid the holding Gillen was negligent as a matter of law by insisting a third "special privilege" is afforded an operator of an emergency vehicle making an emergency run by section 321.-324 which in pertinent part provides:

"Upon the immediate approach of an authorized emergency vehicle with any lamp or device displaying a red light or flashing red light from directly in front thereof, or when the driver is giving audible signal by siren, * . * * the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the righthand edge or curb of the highway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

" * * *

"This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

The trial court agreed with defendant in the view this statute did not specifically grant drivers of emergency vehicles any special privilege to cross the center line of streets in cities and towns when making an emergency run.

■ The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as shown by what the legislature has said, rather than what it should or might have said. A court may not, under the guise of construction, extend, enlarge or otherwise change the terms of a statute. This problem has been discussed by the court in Janson v. Fulton, 162 N.W.2d 438, 442–443 (Iowa 1968); State v. Vietor, 208 N.W.2d 894, 898 (Iowa 1973); Osborn v. Edison, 211 N.W.2d 696, 697 (Iowa 1973); and State v. Johnson, 216 N.W.2d 335, 337 (Iowa 1974). Each of these decisions cite many authorities considering the question of statutory construction.

In order to sustain plaintiff's position in this respect it would be necessary to construe section 321.324 as providing a *specific exception* to the requirements of section 321.297 for operators of emergency vehicles when making emergency runs on a multilane street in cities and towns.

■ Such construction would compel this court to enlarge the terms of section 321.-324 to an improper extent. This we decline to do in view of the fact the legislature, by enacting sections 321.231 and 321.296, saw fit to specifically grant to operators of such vehicles only the "special privilege" of passing a red or stop sign or signal and exceeding speed limitations when making emergency runs.

We agree with the trial court's view section 321.324 did not specifically grant Gillen the special privilege of traveling left of the center line in the circumstances presented by this record.

II. Plaintiff might also seek to avoid a holding it was negligent as a matter of law by offering proof excusing Gillen's failure to observe the legal standard set forth in section 321.297.

■ "Legal excuse is a doctrine by which one seeks to avoid the consequences of his own conduct by showing justification for

acts which would otherwise be considered negligent. This doctrine has been before us many times and has been defined to mean: (1) anything that would make it impossible to comply with the statute or ordinance; (2) anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance; (3) where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute; (4) where a statute specifically provides an excuse or exception.

■ "It is, of course, well settled that one whose own negligence has caused or contributed to a situation which makes it impossible for him to obey the law may not rely upon such conduct as a basis for invoking the doctrine. * * * [citing authorities]." Gibbs v. Wilmeth, 261 Iowa 1015, 1020, 157 N.W.2d 93, 96.

Plaintiff requested an instruction on the meaning of legal excuse which set out the four excuses recognized in Gibbs v. Wilmeth. However, the trial court's instruction on legal excuse set out only the first and second of these.

In motion for new trial plaintiff complained of the court's failure to include in the instruction given the theory "a legal excuse exists where a statute specifically provides an excuse or exception", the fourth recognized excuse.

■ In its ruling denying motion for new trial the court was of the view plaintiff's instruction was not properly requested since it was not filed the first day of trial as provided for in the pretrial order. Plaintiff's request was made after counsel learned the court was to hold it negligent as a matter of law. We disagree with the trial court's reasoning under the circumstances and consider the request on its merits.

Division II of plaintiff's written brief and argument is directed solely to the trial court's failure to include in instruction 17 the fourth excuse. Plaintiff tells us its "entire theory in objecting to the Trial Court's jury instructions is based on the submission of the negligence *per se*. This objection is based upon a claim that Section 321.324 of the Iowa Code (1966) constitutes a statutory exception to the prohibition of Section 321.297 of the Iowa Code (1966) alleged violated by Officer Gillen."

At no time does plaintiff complain of the trial court's failure to include the third excuse—"where the driver of the car is confronted by an emergency not of his own making, and by reason thereof fails to obey the statute."

An emergency has been defined in Young v. Hendricks, 226 Iowa 211, 215, 283 N.W. 895, 898; Brown v. Guiter, 256 Iowa 671, 678, 128 N.W.2d 896, 901; Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 458, 138 N.W.2d 93, 100; Baker v. Wolfe, 164 N.W.2d 835, 839 (Iowa 1969).

Therefore, we do not reach the court's failure to instruct on sudden emergency, the third legal excuse.

In view of our determination in division I of this opinion that section 321.324 does not constitute a statutory exception to the prohibition set forth in section 321.297 plaintiff's attack on instruction 17 is without merit.

III. In divisions III and IV of its brief and argument plaintiff insists it was denied a fair trial and the court erred in overruling its motion for new trial.

■ Plaintiff's argument in support of its contention of not having received a fair trial is based solely on the trial court's interpretation of section 321.324. Since we have determined the trial court was correct in its interpretation of that statute plaintiff's argument is without merit as is its claim for new trial.

The case is therefore

Affirmed.

MOORE, C. J., and RAWLINGS, Le-GRAND, REES and UHLENHOPP, JJ., concur.

HARRIS, REYNOLDSON and McCOR-MICK, JJ., dissent.

HARRIS, Justice (dissenting).

I respectfully dissent from division I of the majority opinion and the result. My disagreement is on the question of whether § 321.324, The Code, 1966, provides a specific exemption "with reference to authorized emergency vehicles" as contemplated in § 321.230. I think it does. Section 321.324 seems to me specific. I think it accords authorized emergency vehicles the right of way in preference to those vehicles required to yield.

The question of whether a statutory violation is negligence is unaffected by whether the mandate is to do an act for the benefit of another (such as in 321.324) or is a prohibition against the doing of an act. 73 Am.Jur.2d, Statutes, § 430, page 529. I do not believe § 321.324 is any less a specific exemption because it is couched in terms of the obligation of others to yield rather than in terms of the right of emergency vehicles to benefit from such yielding.

Section 321.324 should be read in the light of § 321.1(48) which defines streets and highways as the " * * * entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic." The section should also be read in the light of § 321.1(66) which defines right of way as " * * * the privilege of the immediate use of the highway." Statutes relating to emergency vehicles in chapter 321 should be construed together.

"We have also consistently held that statutes relating to the same subject matter or to closely allied subjects must be construed, considered and examined in the light of their common purposes and intent. Such statutes are said to be 'in pari materia'." Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., 165 N.W.2d 771, 774 (Iowa 1969) and citations.

When emergency vehicles statutes are gathered together for such construction they should be studied for conflicts between general and specific statutes. If such conflict appears the specific statute controls. Shriver v. City of Jefferson, 190 N.W.2d 838, 840 (Iowa 1971). Section 321.297 is a general statute applicable to all motor vehicles. Section 321.324 treats the more specific subject of the movement of emergency vehicles. Accordingly it should control.

The obligation to yield imposed upon the traveling public by § 321.324 does not exist in a vacuum but raises corresponding rights to the emergency vehicles. That such rights were intended by the legislature is evidenced by the last sentence of the section. The sentence is a limitation on the specific exemption outlined by the section: "This section [321.324] shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

I believe it was error to instruct the jury Sergeant Gillen was negligent as a matter of law. Whether it was negligent to operate his motorcycle left of the center of street under the circumstances was a question of fact for the jury to decide. I would reverse and remand for a new trial.

REYNOLDSON, and McCORMICK, JJ., join in this dissent.