Susan A. PIEPER, a minor, by Greg Pieper, Her Father and Next Friend, and Greg Pieper, Individually, Appellants,

v.

Arnold H. HARMEYER et al., Appellees.

No. 2–56966.

Supreme Court of Iowa.

Nov. 12, 1975.

124

Sidney E. Drake, Centerville, for appellants.

Fehseke & Fehseke, by R. L. Fehseke, Fort Madison, and Hirsch, Wright, Link & Adams, by John G. Link, Burlington, for appellees.

RAWLINGS, Justice.

Actions arising from a rural road multiple vehicle collision resulted in judgment on directed verdicts for two defendants under the guest statute, and judgment on jury verdict for the other two defendants on negligence counts. Plaintiffs appeal. We affirm in part, reverse in part.

April 2, 1972, report of a motor vehicle collision on a secondary gravel road was received by Lee County sheriff's office. Defendant Dan E. West (West), a deputy, responded to the call in a patrol car owned by defendant sheriff Don E. Arnold (Arnold).

At the accident scene West observed what was later disclosed to be a badly dented automobile owned by one Menke, parked on the west side of the roadway, near the bottom of a hill which inclined about 300 feet to the north. The road was 23 feet wide, with no shoulders, being flanked on each side by ditches. West parked the patrol car on the east side of the highway opposite Menke's disabled vehicle. Deputy West testified the flashing lights atop the patrol car were turned on immediately after it had been stopped. He then went to the Menke car in order to determine whether anyone had been injured. Finding no injuries, he inquired as to identity of the other accident-involved driver. Upon being advised that Janet Groene was the other party, West asked for her driver's license and car registration. She stated they were in her automobile which had been parked near a farmhouse at the top of the aforesaid hill. Miss Groene then walked to her car, drove it back down the hill and parked it behind the Menke vehicle. Thereafter, a north bound pickup truck stopped about 30 feet behind the patrol car on the east side of the road.

Minutes later an automobile driven by John Frary approached from the south, slowing down to pass between the vehicles stationed on both sides of the road. At about the same time, defendant Jon Harmeyer, driving a car owned by his grandfather, defendant Arnold H. Harmeyer, came over the crest of the north hill. Plaintiff Susan Pieper, a minor, was in the front passenger seat. Upon seeing four vehicles on either side of the road and the Frary car approaching between them, Jon applied his brakes. The automobile skidded downhill 280′ 3″ where it struck the left rear fender of the patrol car, then caromed back to the middle of the road and hit the Frary vehicle head-on. The latter vehicle was pushed backward into the parked pickup truck. The Frary and Harmeyer cars then spun around, coming to rest approximately 29′ 4″ south of their original impact point.

There is some conflict in the record as to speed of the Harmeyer car as it came over the hill crest. Estimates range from 45 to 75 miles per hour.

The accident occurred at approximately 6:50 p. m. The locus speed limit was 60 m. p. h.

Earlier in the afternoon, Harmeyer had consumed "one can and maybe a little more of another can" of beer after school.

Plaintiff Susan Pieper sustained rather extensive injuries. At trial time, her face was noticeably scarred. She seeks $75,000 damages and her father, in his own behalf, asks $15,000.

September 10, 1973, the case proceeded to trial on these counts of plaintiffs' petition, as amended:

I.  Susan Pieper (by her father, Greg Pieper) against the Harmeyers for recklessness and driving while under the influence of intoxicating liquor, in violation of Iowa's "guest statute", Section 321.494, The Code 1971.

III. Greg Pieper, individually, against the Harmeyers for recklessness as alleged in Count I.

IV. Susan Pieper (by her father) against defendants Arnold and West for negligence in improperly parking the patrol car and failing

to warn other drivers of a dangerous condition in the road ahead.

V. Greg Pieper, individually, against defendants Arnold and West for negligence alleged in Count IV.

At close of plaintiffs' case, trial court sustained a directed verdict motion for the Harmeyers. Trial continued against Arnold and West on counts IV and V. Their defense is premised on the theory the patrol car was operating in response to an emergency call; plaintiff Susan Pieper was contributorily negligent; and sole proximate cause of the accident was defendant Jon Harmeyer's negligence.

The case against Arnold and West was submitted to the jury on allegations noted above, with verdict being returned for said defendants. Plaintiffs moved for a new trial. With regard to Susan this motion was overruled. It was, however, sustained as to her father on count VII, upon his separate derivative cause of action against the Harmeyers for negligence. See *Irlbeck v. Pomeroy*, 210 N.W.2d 831, 833–834 (Iowa 1973).

In support of a reversal on the directed verdict for defendants Jon and Arnold Harmeyer, plaintiffs contend trial court erred:

(1) in directing a verdict for said driver-owner (hosts) on the ground that plaintiffs failed to generate a jury question on the recklessness issue;

(2) in holding, as a matter of law, a guest may not recover from the hosts (driver and owner) on proof of *ordinary negligence* by the driver.

These contentions will be considered in reverse order.

As to the jury verdict for defendants Arnold and West, plaintiffs assert trial court erroneously instructed the jury regarding "special privileges" accorded authorized emergency vehicle drivers when responding to an emergency call.

I. Plaintiffs' claim to the effect our guest statute, § 321.494, is unconstitutional must be summarily rejected since this issue was never raised below. As stated in *Wolfs v. Challacombe*, 218 N.W.2d 564, 570 (Iowa 1974):

"Ordinarily, issues not raised in the trial court, including constitutional questions, cannot be effectively asserted the first time on appeal. Furthermore, the constitutionality of a statute may not be considered as a basis for reversal where the question was not raised in the lower court. *State v. Russell*, 216 N.W.2d 355, 356 (Iowa 1974). Since plaintiff's contention in this respect was not urged in the trial court it presents nothing for review in this court."

See also *Hale v. Taylor*, 192 Neb. 298, 220 N.W.2d 378, 380 (1974).

The above assignment is not entertained.

II. As aforesaid, plaintiffs assert. trial court erred in directing a verdict for the driver and owner of the Harmeyer vehicle on the ground that plaintiffs had failed to create a jury question on the recklessness issue.

Where, as here, a guest brings an action alleging recklessness, our function on appeal from a directed verdict for the owner-driver hosts has been thus stated:

"[I]t is not the court's duty to determine whether defendant was reckless, but we are required to examine the evidence to determine whether there is sufficient evidence from which a jury might reasonably draw an inference of reckless operation." *Vipond v. Jergensen*, 260 Iowa 646, 649, 148 N.W.2d 598, 600 (1967).

In applying this standard we need only consider the evidence favorable to plaintiffs, whether or not contradicted, in determining whether a jury question was generated. See *Vogel v. Reeg*, 225 N.W.2d 132, 134 (Iowa 1975); Iowa R.Civ.P. 344(f)(2).

There is one final element—perhaps the most important—in the test to be applied: "The evidence of recklessness * * *must be substantial* before a jury question

is generated." (Emphasis supplied). *Vogel v. Reeg, supra.*

III. We also said in *Vogel, supra* :

" 'Reckless operation of a motor vehicle as used in our "guest statute", section 321.494, Code 1962, means more than negligence, more than want of ordinary care. It means, proceeding with no care coupled with disregard for consequences, the acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or so obvious the operator should be cognizant of it, when the consequences of such actions are such an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligence it may be reckless without being willful and wanton. The elements of recklessness are: (1) No care coupled with disregard for consequences, (2) there must be evidence of defendant's knowledge, actual or chargeable, of danger and proceeding without any heed of or concern for consequences, and (3) the consequences of the actions of the driver are such that the occurrence of injury is a probability rather than a possibility. * * *. [Citations].' "

And in an earlier case, *Krell v. May*, 260 Iowa 518, 525, 149 N.W.2d 834, 839 (1967), after defining recklessness in substantially the same manner as above, this court concluded:

"Perhaps * * * we have neglected to stress the primary objective we seek, namely, the driver's mental attitude as disclosed by his acts and conduct immediately prior to and at the time of the accident."

Descriptive of such attitude is this statement in *Hartman v. Kruse*, 249 Iowa 1320, 1328, 91 N.W.2d 688, 692 (1958): "It is when a driver has conscious knowledge of a dangerous situation and then does not exercise the slightest care to avoid injury to his guest that recklessness is shown. [Citations]."

Finally noted is this pertinent statement in *Goodman v. Gonse*, 247 Iowa 1091, 1098, 76 N.W.2d 873, 877 (1956):

"Recklessness is an inference of fact to be drawn from the evidence offered and is a matter for the determination of a jury if the facts disclosed can reasonably be said to support such an inference. However, facts disclosed which can support a finding of recklessness only through speculation and conjecture must not be submitted for jury determination. It is the court's duty to first pass upon the question as to whether or not the facts disclosed by the evidence, plus the reasonable inferences that could be drawn therefrom, would support such a finding of recklessness. [Citation]. The evidence must disclose something from which recklessness could be legitimately inferred. [Citations]. It is the general rule in this state that in matters of proof, a litigant is not justified in inferring a fact as proven from mere possibility of existence of facts. [Citation]."

IV. Mindful of the foregoing we turn now to the record, viewed most favorably to plaintiffs, upon which the recklessness issue must be resolved.

(1) Jon's speed upon approaching the hilltop could have been anywhere from 45 to 75 m. p. h. and whatever such speed may have been, it was not reduced until after he had negotiated the crest and observed the vehicles ahead;

(2) Jon had consumed "one can and maybe a little more of another can" of beer less than two hours before the accident;

(3) Jon was 17 at time of said accident and had been driving for about one and a half years;

(4) Jon was "generally familiar" with the road on which the collision occurred and had traveled over it "more than a few times";

(5) Jon could not see over the hill as he approached the crest and did not realize there might be cars on the other side;

(6) the road was 23 feet wide.

So the question now posed is whether the foregoing factors or any combination thereof, constitute such *substantial* evidence of recklessness as to create a jury issue.

An exhaustive review of the innumerable related cases which have emanated from this and other jurisdictions would serve no useful purpose. See *Lewis v. Baker*, 251 Iowa 1173, 1176, 104 N.W.2d 575 (1960). Nevertheless, "[w]hile each 'guest statute' case must turn on its own facts, prior decisions involving similar factual patterns are worthy of consideration." *Vogel v. Reeg, supra,* 225 N.W.2d at 136.

Despite plaintiffs' claim to the contrary, *Oehlert v. Kramer*, 205 N.W.2d 723 (Iowa 1973), is so factually distinguishable it cannot be "compared favorably" with the case at bar, i. e., be deemed dispositive.

Neither can we accept Harmeyers' argument to the effect *Shoop v. Hubbard*, 259 Iowa 1362, 147 N.W.2d 51 (1966) is here controlling. While *Shoop* may in some respects be comparable with the case at hand, it should be noted *Shoop* was based, in part, on plaintiff's failure to show a persistent course of conduct showing no care with regard to the consequences. *Id.* 259 Iowa at 1367, 147 N.W.2d 51. We have since held, however, a persistent course of conduct is not an essential element of recklessness but may be considered in determining recklessness as opposed to negligence. See *Winkler v. Patten*, 175 N.W.2d 126, 131 (Iowa 1970).

■ V. Unquestionably, "speed alone is not sufficient evidence to engender a jury question on recklessness, but this statement is subject to qualification depending upon the circumstances in each case." *Vogel v. Reeg, supra,* 225 N.W.2d at 136.

Consequently, we must look to factors, other than speed, disclosed by the record.

VI. First considered is the matter of beer consumed by Jon Harmeyer as it relates to any alleged recklessness on his part. Looking again to the record, it discloses

Susan Pieper testified Jon "seemed excited, different than when [she] had last seen him."

On the other hand, there is substantial evidence disclosing Jon walked and talked normally and did not smell of alcohol. There is also opinion testimony that Jon "was in no way under the influence of intoxicants".

In light of the foregoing this statement in *Christopherson v. Christensen*, 258 Iowa 648, 656, 140 N.W.2d 146, 151 (1966), comes into play:

"As to the element of intoxication, no one testified defendant was intoxicated, nor did anyone express any opinion as to whether the beer consumed did or would tend to cause him to exercise no care in his driving. We cannot speculate on this vital matter, and conclude the circumstances revealed, including that of beer consumption, viewed in a light most favorable to plaintiff, would not support a finding of recklessness."

See generally *Cunning v. Knott*, 157 Neb. 170, 59 N.W.2d 180 (1953); *Valencia v. Strayer*, 73 N.M. 252, 387 P.2d 456 (1963).

VII. Also considered is Jon Harmeyer's age and driving experience.

In *Hardwick v. Bublitz*, 254 Iowa 1253, 119 N.W.2d 886 (1963). A 15 year old driver failed to negotiate a curve while traveling 55 m. p. h. on a gravel road. Although factually distinguishable from the case at hand, this comment in *Hardwick*, is here applicable:

"If an inference of recklessness can be drawn in this case it must be from the fact of Dean's inexperience, and not from his conduct on the highway. We do not think such inference can fairly be drawn. The most that can be said is that it is negligence. Inexperience does not show no care, coupled with disregard for consequences, neither does it show that injury is the probable result of the driving, nor does it constitute knowledge on the part of Dean of existing danger or of danger

of which he should be cognizant. [Citation]." 254 Iowa at 1264, 119 N.W.2d at 892.

Cf. *Siesseger v. Puth*, 216 Iowa 916, 925, 248 N.W. 352 (1933).

VIII. We are additionally satisfied nothing in the factual situation regarding Jon's familiarity with his grandfather's car and the road, lack of shoulders, presence of hills, or any other factors may be said to have been so established in plaintiffs' favor as to alter the result.

■ IX. In the case before us none of the elements considered above can be said to have been so substantially established that *reasonable minds* could legitimately infer Jon Harmeyer drove with a heedless disregard of the consequences or indifference to Susan Pieper's rights and safety. In other words, the evidence presented is not of such substantiality as to raise a jury issue on recklessness.

Admittedly, there is recent authority in this jurisdiction which might well support an action by Susan based on *negligence*. See *Coppola v. Jameson*, 200 N.W.2d 877 (Iowa 1972). But, as heretofore noted, recklessness means more than negligence or want of ordinary care. Pertinent thereto is this statement in *Krell v. May, supra*, 260 Iowa at 525, 149 N.W.2d at 839:

> "We have often said it is imperative for courts and lawyers to recognize a *substantial distinction* between negligent and reckless operation of a vehicle, that the general rule laid down by the guest statute is * * * that to recover a passenger must show he comes under the exception, and that the exception is not to become the rule by too liberal judicial construction." (Emphasis supplied).

Trial court did not err in sustaining the directed verdict motions by defendants Arnold H. and Jon Jay Harmeyer.

X. In attacking the verdict for defendants Arnold and West, plaintiffs contend trial court erroneously submitted to the jury this part of Instruction No. 9:

> "The laws of Iowa provide that no driver of any authorized emergency vehicle shall assume any special privilege except when such vehicle is operated in response to an emergency call or in immediate pursuit of an actual or suspected violator of the law.

> "As applied to this case, if you find that the defendant, Dan E. West, was operating an authorized emergency vehicle in response to an emergency call and that said emergency existed at the time and place of the accident in question, this fact if it be a fact, may be taken into consideration by you in determining whether the defendant, Dan E. West, did in fact exercise reasonable and ordinary care under the circumstances as shown by the evidence."

By timely objection thereto plaintiffs asserted, in material part:

> "[T]his instruction which relates to special privilege of an officer answering an emergency call is not applicable to the facts in this case. The statute in essence reads that no driver shall assume any special privilege except in response to an emergency call or an immediate pursuit of an actual or suspected violator. Clearly by the language of the statute, it applies to the operation of a vehicle or driving of a vehicle to the scene. The very language itself, 'in response', we believe is intended to apply to the fact that an officer may exceed the speed limit in going to the scene of an accident or emergency or may violate the stop signs or whatever is necessary to get there, and that therefore, that instruction would be prejudicial to the plaintiffs here as the negligence charged against this defendant relates to what he did after he arrived at the scene and it may mislead the jury into thinking he is privileged in everything he did there."

■ We find this objection sufficed to preserve error regarding the matter of "special privilege" in connection with

West's parking of the sheriff's car on a public highway.

First on this subject, Code § 321.354 says, in relevant part:

"Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of two hundred feet in each direction upon such highway; * * *."

■ Next, our opinion in *City of Cedar Rapids v. Moses*, 223 N.W.2d 263 (Iowa 1974), makes it evident Deputy West was entitled to no parking "special privilege" at the time and place in question. By the same token a violation of § 321.354 would mean West was negligent per se, absent a legal excuse. *Id.*, 223 N.W.2d at 267–268; *Johnson v. Baker*, 254 Iowa 1077, 1081–1082, 120 N.W.2d 502 (1963).

It therefore follows, and we now hold, trial court reversibly erred in giving the controverted instruction set forth above. See *Heldenbrand v. Executive Council of Iowa, State*, 218 N.W.2d 628, 637 (Iowa 1974).

Since this case must be accordingly reversed and remanded for a new trial upon plaintiffs' action against defendants Arnold and West, further consideration of legal excuse as related to the factual situation heretofore described is deemed appropriate.

■ At the outset it is well settled the legal excuse doctrine may be considered and instructed upon if warranted by substantial affirmative evidence, even though not pled. See *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 643 (Iowa 1969); *Reed v.*

*Willison*, 245 Iowa 1066, 1071, 65 N.W.2d 440 (1954). See also *Rubel v. Hoffman*, 229 N.W.2d 261, 264 (Iowa 1975).

Admittedly, said doctrine has usually been applied to those situations where it would be hazardous for a driver to proceed on an intended course, commonly referred to as sudden emergency.

Looking, however, to the other side of the coin, this court said in *Kisling v. Thierman*, 214 Iowa 911, 916, 243 N.W. 552, 554 (1932):

"By the term 'legal excuse' is meant:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception."

That definition has since been repeated by us in substantially the same terms. See e. g., *Moses, supra*; *Baker v. Wolfe*, 164 N.W.2d 835, 838 (Iowa 1969).

■ By virtue of the record made on trial of the instant case it would appear an application of element (3) of the above stated excuse doctrine, by appropriate jury instruction, might well have been in order.

Adoption of a contrary view could unduly discourage, if not prevent, often essential prompt medical or lifesaving services by doctors, peace officers or ambulance personnel, and deter many worthy rescue efforts, as in *Henneman v. McCalla*, 260 Iowa 60, 148 N.W.2d 447 (1967).

■ Understandably, any party invoking the above noted humanitarian excuse concept must be held to the same standard of care which an ordinarily prudent person would exercise under the same or similar

circumstances in avoidance of injury to others. See *Johnson v. Baker, supra,* 254 Iowa at 1081, 120 N.W.2d 502; *Jones v. O'Bryon,* 254 Iowa 31, 36, 116 N.W.2d 461 (1962); *Fagen Elevator v. Pfiester,* 244 Iowa 633, 639, 56 N.W.2d 577 (1953); 57 Am.Jur.2d, Negligence, §§ 90–92; 65 C.J.S. Negligence § 17.

■■■ XI. It must also be kept in mind any determination as to whether a peace officer was responding to an "emergency call" is, in the ordinary case, an issue to be determined by the trier of the fact, usually a jury. See *City of Des Moines v. Huff,* 232 N.W.2d 574, 578–579 (Iowa 1975), citing *Coltman v. City of Beverly Hills,* 40 Cal. App.2d 570, 105 P.2d 153 (1940); cf. *Bravata v. Russo,* 41 Misc.2d 376, 245 N.Y.S.2d 702 (1963).

■■■ XII. Furthermore, since an emergency is characteristically transitory it may be said to have ceased when, under all the facts and circumstances a reasonable time has elapsed within which to dispositively resolve all elements of the exigency prompting the negligent conduct sought to be legally excused (illustratively, stopping or parking a vehicle on a public highway). See *Pugh v. Akron-Chicago Transp. Co.,* 64 Ohio App. 479, 28 N.E.2d 1015, 1023 (1940), aff'd 137 Ohio St. 164, 28 N.E.2d 501 (1940); cf. *LaPlante v. State,* 200 Misc. 396, 107 N.Y.S.2d 615, 616–617 (1940), aff'd 303 N.Y. 648, 101 N.E.2d 762; 278 App.Div. 739, 103 N.Y.S.2d 669 (1951). Here again such issue is ordinarily determinable by the trier of the fact. Viewed in this perspective trial court, regardless of all else, clearly erred in overruling plaintiffs' above stated objection to instruction 9. The jury should have been appropriately instructed on the termination of emergency issue.

This case is affirmed as to defendants Arnold H. and Jon Jay Harmeyer, but reversed and remanded for a new trial on plaintiffs' action against defendants Don E. Arnold and Dan E. West.

Costs are taxed one-half to plaintiffs, one-half to defendants Arnold and West.

Affirmed in part, reversed in part and remanded for a new trial.

All Justices concur.